SAFE DEPOSIT AND TRUST COMPANY,

ADMINISTRATOR,

*vs.*

STATE OF MARYLAND.

*Collateral Inheritance Tax—Income During Administration.*

The collateral inheritance tax, for which the law of Maryland provides, is chargeable as to the whole of the estate for distribution, including the income accruing during the period of administration, the statute requiring it to be paid by the executor or administrator at the rate of five per cent. of "every hundred dollars he may hold for distribution," and the tax being on the transmission of property and being a premium for the enjoyment of the benefit thereby secured.         pp. 645-649

That Acts 1908, ch. 695, amending Code, art. 81, sec. 120, so as to increase the rate of the collateral inheritance tax from two and one-half per cent., as named therein, to five per cent., did not refer to section 121, which also named the rate as two and one-half per cent., is immaterial, it being the evident purpose of the amendment to change the law generally with respect to the rate, and this purpose having been given effect in Bagby's Code, which has been published and legalized since the amending statute was enacted.

*Decided June 26th, 1923.*

Appeal from the Baltimore City Court (FRANK, J.).

*Action by the State of Maryland against the Safe Deposit and Trust Company of Baltimore, administrator of Samuel R. Vickers, deceased. From a judgment for plaintiff, defendant appeals. Affirmed.*

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, and OFFUTT, JJ.

*Charles McHenry Howard* and *Arthur W. Machen, Jr.,* with whom were *Venable, Baetjer & Howard* and *Hershey, Machen, Donaldson & Williams* on the brief, for the appellant.

*Alexander Armstrong, Attorney General,* and *Allan H. Fisher, Assistant Attorney General,* for the State.

URNER, J., delivered the opinion of the Court.

The personal estate of Samuel R. Vickers, a resident of Baltimore City, who died intestate on May 12th, 1922, was distributable among his collateral next of kin. The amount of the estate for distribution, after the payment of debts, commissions and expenses, was $189,214.57. This included $5,006.09 of income accrued and collected during the period of administration. The question presented is whether the collateral inheritance tax, for which the law of Maryland provides, is chargeable as to the whole of the estate for distribution, or whether the income which it included should be disregarded for the purposes of the tax. In view of the terms of the statute, and of previous decisions of this Court on the subject, we can have no doubt as to the correctness of the lower court's decision that the tax applies to the entire estate passing to the distributees.

After the general Code provision (article 81, section 120), that all estates passing to collaterals from persons "who may die seized and possessed thereof," in this State, shall be subject to a tax of five per cent. of their clear value, it is directed, by section 121, that: "Every executor or administrator, to whom administration may be granted, before he pays any legacy, or distributes the shares of any estate liable to the tax imposed by the preceding section, shall pay to the Register of Wills of the proper county, or city, five per centum of every hundred dollars he may hold for distribution among the distributees or legatees." It is provided by section 122 that: "When any species of property other than money or real estate shall be subject to said tax, the tax shall be paid on the

appraised value thereof as filed in the office of the register of wills of the proper county or city."

This Court has said that the payment of the collateral inheritance tax is "one of the conditions upon which strangers and collateral kindred may acquire a decedent's property which is subject to the dominion of our laws." The tax was said to be "on the transmission of the property." It "is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated to be transmitted by will or by descent or distribution." *State* v. *Dalrymple,* 70 Md. 299; *Fisher* v. *State,* 106 Md. 120. In order that the theory and purpose of the tax, as thus defined, may be given full effect, it seems clear that the tax should be computed on the basis of the whole amount of the estate passing to the collateral recipients. This is distinctly required by the provision quoted that the tax to be paid by the executor or administrator shall be five per cent. "of every hundred dollars he may hold for distribution," and the general intent of the law that the tax shall apply to the amount of the estate *distributed* has been definitely recognized by this Court in the two cases we have cited.

In the *Dalrymple* case the personal estate in Maryland passing under the will of a California testator had an appraised value of $27,337.87 when it was received by the administrators c. t. a. in this State. It was reduced to $21,449.21 by the payment of costs and expenses, but by "accretions from dividends and interest" it had increased to $27,320.77 when it was ready for delivery to the residuary legatee named in the will, who was not so related to the testator as to be exempted from the effect of the collateral inheritance tax. After holding that the words "being in this State," as used in the statute, had reference to the location of the decedent's property, and not to his domicile, and that the estate in question, being actually in Maryland, was subject to the tax, although the testator was a non-resident, the Court, speaking

through JUDGE McSHERRY, said that the amount of the tax would "depend upon the sum in the hands of the appellees (administrators) payable to the legatee."

In the *Fisher* case there was a will by which a trust of the residuary estate of the testator was created for the benefit of his widow during her life, with remainder to such persons as she by her will might appoint. The value of the trust estate, as transferred to the trustees in course of administration, was $231,395.44, including real property valued at $43,000. When the widow's life interest expired, about eight years later, the estate had increased in value to $734,439.36. By her will the widow executed the power of appointment conferred upon her by the will of her husband. In reference to the application of the collateral inheritance tax law, it was contended that the tax could be charged only with respect to the value of the estate as it existed at the death of the testator from whom it was derived and under the terms of whose will the power to designate the remaindermen was exercised. But this contention was overruled, and it was said in the opinion of the Court delivered by JUDGE BRISCOE: "The tax is on the transmission of the property, and upon the estate the beneficiary is to receive and enjoy. There could be no transfer or enjoyment of the property, by the beneficiary in this case, until the death of Mrs. Johnston (the widow), and this being so, the collateral inheritance tax was payable, upon the clear value of the estate, at her death, and at the time the collateral beneficiary received the benefit of the bequest and devise under the will. In other words, the tax is imposed upon the clear value of the estate, at the 'passing and transferring' of the estate to the collateral beneficiary."

The two decisions to which we have referred are directly opposed to the appellant's theory that the tax does not apply to any increment of the estate accruing after the death of the testator or intestate.

But it is argued that our decision in the case of *State* v. *Fusting,* 134 Md. 349, tends to support the appellant's con-

tention.    In the opinion delivered in that case it was said
that the obligation of the executor to pay the collateral in-
heritance tax must be determined as of the time of the testa-
tor's death.    This was said in reference to a question alto-
gether different from the one now being decided.    The sole
inquiry in that case was whether the proceeds of Arkansas
real estate, sold under the will of a Maryland testator, were
subject to the collateral inheritance tax under the provisions
of article 81, section 120, of the Code.    The proceeds of the
sale were reported and administered by the executor in this
jurisdiction, but it was held that the fund was not property of
which the testator "died seized and possessed" in this State,
within the purview of the Code provision just cited.    That
ruling does not aid us in the decision of the present question.

It is with the estate as it passes to the beneficiary, and not
merely with the estate as it passes from the person who dies
"seized and possessed thereof," that the collateral inheritance
tax law is concerned.    The expressed purpose of the law is
that any property or money passing from a decedent to one
not related within the limits prescribed "shall be subject" to
the tax, and that it shall be paid by the executor or adminis-
trator at the rate of five per cent. of "every hundred dollars
he may hold for distribution" among the persons entitled.
This payment is directed to be made by the executor or ad-
ministrator "before he pays any legacy, or distributes the
shares of any estate liable to the tax imposed" by the statute.
When the legacy or distributive share consists of property
other than money or real estate, the tax is payable "on the
appraised value thereof as filed in the office of the register of
wills."    Separate provision is made by the Code for the
valuation of real estate as to which the tax may be chargeable.
In the case of real estate directly devised to, or inherited
by, a collateral relative of the decedent, there would be no
income funds to which the tax might apply, because the estate
vests immediately in the heir or devisee.    The title of a
legatee or distributee is obtained through administration,

during the period of which the amount for distribution may be increased by receipts of income.

In this case there is money held for distribution to collaterals as part of a personal estate which is liable to collateral inheritance taxation. As the tax is "on the transmission" of the estate, and is "a premium for the enjoyment of the benefit thereby secured" (*Fisher* v. *State,* and *State* v. *Dalrymple, supra*), it should be held to affect equally the current money and the appraised assets thus transmitted and acquired. This conclusion is based upon an interpretation of our own statute, with the aid of previous decisions of this Court on the subject, and we shall, therefore, not discuss the cases, cited in argument, which involved the construction of collateral inheritance tax laws in other jurisdictions.

The rate of the tax was formerly two and a half per cent., but this was increased to the present rate of five per cent. by an act which referred only to the first of the two sections of the Code in which the prior rate was stated. It was the evident purpose of the amendment to change the law generally with respect to the rate, and this purpose has been given effect in the Code which has been published and legalized since the amending statute was enacted.

*Judgment affirmed, with costs.*