WILLIAM D. LILLY et al. *v.* STATE OF MARYLAND ET AL.

[No. 33, October Term, 1928.]

*Decided November 23rd, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Morfit Mullen,* for the appellants.

*Willis R. Jones, Assistant Attorney General,* with whom was *Thomas H. Robinson, Attorney General,* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

By this appeal we are asked to determine three questions: First, is the property now about to be distributed by the Safe Deposit and Trust Company, trustee, to the appellants, subject to a collateral inheritance tax? Second, if so subject, is the proper rate two and a half per cent. or five per cent.? And, third, upon what amount is the tax to be computed?

The facts which give rise to these questions are contained in an agreed statement set forth in the record, and are substantially these:

That Channing Lilly, a resident of Boston, Massachusetts, became the owner of certain fee simple real estate located in Baltimore City, known as No. 323 West Baltimore Street, by deed from Alonzo Lilly dated December 22nd, 1888, duly executed and recorded; that on March 28th, 1898, by deed of that date, duly executed and recorded on April 1st, 1898, Channing Lilly conveyed this property, for a nominal consideration, to a certain James Cummings, of Boston, Massachusetts; that Cummings, for a like consideration, by deed dated also March 28th, 1898, and recorded on the same day as the deed to him, conveyed said property to Channing Lilly, trustee, which later deed is as follows:

"Know all men by these presents, That I, James Cummings of Boston, in the County of Suffolk, and Commonwealth of Massachusetts, in consideration of one dollar to me paid by Channing Lilly of said Boston, the receipt whereof is hereby acknowledged, do hereby give, grant, bargain, sell and convey unto the said Channing Lilly, his heirs and assigns, but in trust as hereinafter mentioned, all that parcel of land with the buildings thereon situate in the City of Baltimore, in the State of Maryland, which is particularly described as follows, that is to say:" (then follows a description of the property known as No. 323 West Baltimore Street, Baltimore City, Md.), "Being the same premises conveyed to me by said Channing Lilly by deed of even date and to be recorded herewith. To have and to hold the granted premises, with all the privileges and appurtenances thereto belonging to the said Channing Lilly, his heirs, successors and assigns, in trust nevertheless, for the following purposes, viz: First: To permit and allow Frances E. Lilly, wife of said Channing Lilly, to occupy said premises during her life, she paying taxes and making ordinary repairs and in case she does not personally occupy said premises, then to pay to her the net rents, profits and income of the same during her life and, in addition, to

the foregoing provision said Trustee shall also from time to time pay to said Frances E. Lilly for her support and protection such amounts from the principal of the trust property as he may see fit, such amounts being raised by sale or mortgage or otherwise. Second: Said trustee shall have full power and authority at any time and from time to time to sell and execute deed or deeds to convey absolutely or in mortgage with usual power of sale the whole or any part of said premises or of any real estate that may be held under this trust and no purchaser or mortgagee shall be liable for the application of the purchase money. Third: Said trustee shall also have full power to change the investment of the whole or any part of the trust property from time to time and at any time as said trustee may see fit and to do all that is necessary to effect the same. Fourth: Upon the decease of said Frances E. Lilly to pay the income to said Channing Lilly, if surviving, during his life, or if said Channing Lilly does not survive and in any event upon the death of the survivor of said Frances E. Lilly and Channing Lilly the principal of said trust property is to be paid and conveyed or directed by the last will of said Channing Lilly, or in default of such will to his then heirs at law. Fifth: Upon the termination of this trust by an instrument in writing signed by said Channing Lilly and Frances E. Lilly duly recorded in the Registry of Deeds all the trust property shall vest in and become the property of said Channing Lilly, his heirs and assigns forever, absolutely, free from all trust. Sixth: These terms of trust may at any time be terminated or changed and rechanged in any way and to any extent by an instrument in writing signed by said Channing Lilly and Frances E. Lilly and duly recorded in the Registry of Deeds with the same right thereafter at any time and from time to time to change and rechange the existing terms of trust or terminate said trust by an instrument in writing signed and recorded as aforesaid, and I, the said James Cummings, do hereby, for myself and my heirs, executors and adminis-

98

trators, covenant with the said grantee and his heirs, successors and assigns, that the granted premises are free from all incumbrances made or suffered by me, and that I will, and my heirs, executors and administrators shall warrant and defend the same to the said grantee and his heirs, successors and assigns forever against the lawful claims and demands of all persons claiming through or under me, but against none other."

That Channing Lilly died February 29th, 1912, leaving an estate of the approximate value of $300,000, about one-half of which was located in Massachusetts and the residue in Maryland, his Maryland property consisting of the real estate referred to in the aforementioned deed of trust, and certain bonds, mortgages and other property; that Channing Lilly left a last will and testament which was duly admitted to probate in the Orphans' Court of Baltimore City, and under which said will the Safe Deposit & Trust Company of Baltimore was appointed co-executor and trustee as to the real and leasehold property in Maryland, the provisions of the will of Channing Lilly relevant to this case being those in which the testator made provision for the distribution of his property after the death of his widow, who survived him, and under these provisions, upon the termination of the widow's life estate, the property covered by the deed of trust was devised and bequeathed to the appellants, who are collateral relatives, being his nephews and niece. That upon the death of Channing Lilly the Safe Deposit & Trust Company of Baltimore was substituted as trustee by an order of the Circuit Court of Baltimore City passed on March 18th, 1912, the circuit court assuming jurisdiction over the further administration of the trust created by the deed. That subsequently the substituted trustee, in October, 1920, sold the Baltimore Street property and reinvested the proceeds under the order and direction of the circuit court. That Frances E. Lilly, widow of Channing Lilly, the life tenant, died on August 25th, 1927, and at the time of her death the trust estate consisted of certain bonds and mortgages of the appraised value of $80,560; that the real estate con-

veyed by the deed of trust, at the time of the death of Channing Lilly on February 29th, 1912, had a value of $50,000; that no collateral inheritance tax has heretofore been paid on the said real estate or the proceeds of the sale thereof, or any property constituting the trust estate. It is further agreed that if any collateral inheritance tax shall be held to be payable, if the value of the property in question is determined as of the date of the death of the said Channing Lilly, the same will be payable upon the value of said real estate, to wit, $50,000, but that if a collateral inheritance tax is held to be payable upon the value of the said estate at the time of the death of said Frances E. Lilly, the same will be payable upon the said amount of $80,560.

The lower court decreed that the trustee, the Safe Deposit & Trust Company, pay to the register of wills, for the use of the State of Maryland in due course of administration of this estate, the collateral inheritance tax at the rate of five per cent. on the sum of $80,560, the said amount being the agreed valuation of the property passing to the nephews and niece of the said Channing Lilly. The appeal is taken from that decree.

We will consider the questions in the order in which we have stated them.

First: Is the property in question subject to any collateral inheritance tax? The authority under which the State claims its right to collect this tax is contained in section 124 of article 81 of the Code, which is: "All estates, real, personal and mixed, money, public and private securities for money of every kind passing from any person who may die seized and possessed thereof, being in this state, or any part of such estate or estates, money or securities, or interest therein, transferred by deed, will, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor to any person or persons, bodies corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor, bargainor or testator, donor or intestate, shall be subject to a

tax of five per centum in every hundred dollars of the clear value of such estate, money or securities." This section has been the subject of construction by this court in a number of cases, which, in our opinion, relieve the present case from much difficulty.

· The statute provides: "All estates passing from any person who may die seized and possessed. thereof, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor." It is urged that this property passed by virtue of the terms of the deed from Cummings to Channing Lilly, trustee, and that it was not intended to take effect after the death of the grantor in that deed. This contention would have much weight, and might be decisive of the question, if, for the purposes sought to be accomplished by the statute, Cummings can be rightfully considered the grantor, because, undoubtedly, the taking effect in possession of the property described in the deed was not made or intended to be governed by the death of Cummings. The appellants are entitled at this time to the beneficial enjoyment of the property, without regard to whether Cummings is living or dead, and it was clearly not intended that their enjoyment of the property should be contingent or made to take effect only upon his death. One of the familiar rules for construing statutes is that it shall be given that construction which gives effect to the clearly indicated purpose of the legislative body, unless such construction would violate some established rule of law or property. The intention of the Legislature in this case is plain, that they proposed to exact from strangers or collateral heirs five per cent. of the value of what is distributed to them, as a premium for the privilege granted by the State of receiving it, and which they are to become entitled to after the death of the person through whose bounty they are to receive it. This being true, no device, whether intended for that purpose or not, should be sanctioned which would deprive the State of the tax which it exacts.

In *State v. Dalrymple,* 70 Md. 295, where the court was considering the provision of the Code now before us, Judge

McSherry said: "The act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our laws should pay a certain premium for its enjoyment. In other words, one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is that there shall be paid out of such property a tax of two and a half per cent. into the treasury of the State. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated, to be transmitted by will or by descent or distribution. That this is so, is abundantly clear from the language of the statute and its several provisions." *Fisher v. State,* 106 Md. 117; *Smith v. State,* 134 Md. 478; *Safe Deposit & Trust Co. v. State,* 143 Md. 644.

Channing Lilly was the absolute fee simple owner of the property on March 28th, 1898, at the time he conveyed it, for a nominal consideration, to James Cummings, and had been such owner for ten years prior thereto. On the same day James Cummings conveyed it to Channing Lilly, as trustee, for the purposes and under the conditions contained in the deed of trust heretofore mentioned. This conveyance was also upon a nominal consideration. Under such circumstances, the conclusion is irresistible that the property was conveyed by Channing Lilly to James Cummings for the purpose, and only for the purpose, of creating a trust. Disregarding the form or method adopted, it seems to us clear that, in substance, it was the creation of a trust by Channing Lilly himself. We are not to be understood as holding that the form or device adopted in this case was for the purpose of evading the collateral inheritance tax; but no matter what its purpose was, if we should hold that it relieved the appellants from being liable to the tax, it would, in the language of this court in *Smith v. State, supra,* "point out an easy way of evading the intent and plain provision of the statute," and, we have no doubt, would be quickly adopted by those desiring to place their property beyond the reach of

the statute. Under the provisions of the deed of trust, Channing Lilly, the trustee, had possession of the property, could sell or mortgage same, as he saw fit, the purchasers or mortgagees, by its terms, not being required to see to the application of the purchase money, and if he should outlive his wife he was entitled to the beneficial use thereof; whether he outlived her or not, he was empowered by its provisions to dispose of the remainder by his will, and in default of so doing, it was to become the property of his heirs at law. The deed of trust, it is true, gave the first life estate to Frances E. Lilly, his wife, but for all practical purposes he was otherwise the owner. By his last will and testament, made pursuant to the powers contained in the deed of trust, he devised the remainder, after his wife's life estate, to the appellants, which they were to enjoy in possession after his death. In form, he derived this power from the terms of the deed from James Cummings, but in reality, he reserved it in himself, he being, as shown, the actual beneficial owner at the time the Cummings deed to him was made, and Cummings being only a conduit of title through which the transaction was accomplished. Our answer, therefore, to the first question, is that the property is liable to a collateral inheritance tax.

We come now to the question of whether it is liable to a tax of two and a half per cent. or five per cent. The appellants became vested of their interest in the property only after the death of Channing Lilly, which occurred February 29th, 1912, at which time the rate of collateral inheritance tax was five per cent., and is the rate which controls the payment of the tax. For the purpose of determining what rate of tax is to be applied, the law in effect at the time of the vesting of the estate governs. It was held in the case of *State v. Safe Deposit and Trust Co.,* 132 Md. 251: "That while a change of the statute with regard to the mode of procedure for the ascertainment of the value of the estate, or for the collection of a tax, was valid and applicable, it was inapplicable to affect the substantive rights of an interested party; those became fixed and certain as of the time of the

death of the testator. In so far as such statutes operate to affect the rights of the parties, they are to be given a prospective interpretation only. The rule is generally equally applicable whether the remainder be a vested or contingent one." And cases there cited. In that case the language used by the court in *Re Davis' Estate,* 149 N. Y. 539, was quoted with approval: "Whatever confusion exists in the authorities on the subject seems to be due to a failure to properly distinguish between the time when the title passed in a given case and the time when the legatee became entitled to the possession under the will." In the case just referred to (132 Md.) Mr. Rivera made a will by which his wife was given the life estate, with remainder to certain designated persons. At the time of the vesting of the remainder, the date of Mr. Rivera's death, the rate of tax in force in this state was two and a half per cent., while, at the time of the life tenant's death and the taking effect in possession of the remainder, the rate was five per cent. This court there held that the rate in effect at the time of the vesting of the estate controlled, and the increase in the rate subsequently made was not applicable. In the present case the rate in effect in 1898, at the date of the deed of trust, was two and a half per cent., while at the time of Channing Lilly's death, when his will took effect, it was five per cent. The contention of the appellants is that the rate in effect at the date of the deed should control. The lower court decided adversely to this contention; and we are in accord with that view. These appellants took no interest whatever in the estate until Channing Lilly's death, at which time they took a vested remainder, and therefore such remainder interest became liable to the rate of collateral inheritance tax then in force.

Finally, it is the contention of the appellants that whatever rate may be determined upon, the tax at that rate is to be computed upon the value of the estate at the time of Channing Lilly's death, and not at the termination of the life estate, at which time they came into possession. This contention is fully answered by the decisions of this court. It was directly passed upon in *Fisher v. State, supra.* In

that case Mr. Henry E. Johnston left a will in which his wife was given the life estate, with remainder to such persons or corporations as Mrs. Johnston might appoint by her will, and in default of such appointment, to the Harriet Lane Home for Invalid Children of Baltimore City. Mrs. Johnston executed her will, by the provisions of which her brother-in-law was given the life estate, with remainder to the same corporation which had been named to take the residuary estate in the event she made no appointment, by the will of her husband. At the time of the death of Mr. Johnston the estate amounted to $231,394.44, while at the death of Mrs. Johnston the value of the estate had increased to $734,439.36; and the question there was, upon which of these amounts the tax should be computed. In dealing with that question the court said: "It is urged, however, by the appellant that upon whatever estate the collateral inheritance tax is imposed by the statute, it is imposed as of the death of the testator (Mr. Johnston), from whom the estate comes, and not upon the value of the estate at the time of the death of Mrs. Johnston. This contention, we think, is answered by the statute itself. The tax is imposed upon the clear value of all estates passing by will or otherwise, at the time it is transferred and received by the collateral beneficiary. The tax is on the transmission of the property, and upon the estate the beneficiary is to receive and enjoy. There could be no transfer or enjoyment of the property, by the beneficiary in this case, until the death of Mrs. Johnston, and this being so, the collateral inheritance tax was payable, upon the clear value of the estate, at her death, and at the time the collateral beneficiary received the benefit of the bequest and devise under the will. In other words, the tax is imposed upon the clear value of the estate at the 'passing and transferring' of the estate to the collateral beneficiary." And in *Dalrymple's Case, supra,* this court said that, "the amount of the tax will depend upon the sum in the hands of the appellees payable to the legatee." In *Safe Deposit and Trust Co. v. State,* 143 Md. 644,, Judge Urner, speaking for the court, said: "It is with the estate as it passes to the beneficiary, and not merely with the estate as

it passes from the person who dies 'seized and possessed thereof,' that the collateral inheritance tax law is concerned. The expressed purpose of the law is that any property or money passing from a decedent to one not related within the limits prescribed 'shall be subject' to the tax, and that it shall be paid by the executor or administrator at the rate of five per cent. of 'every hundred dollars he may hold for distribution' among the persons entitled. * * * As the tax is 'on the transmission' of the estate, and is 'a premium for the enjoyment of the benefit thereby secured,' it should be held to affect equally the current money and the appraised assets thus transmitted and acquired. This conclusion is based upon an interpretation of our own statute, with the aid of previous decisions of this court on the subject, and we shall, therefore, not discuss the cases, cited in argument, which involved the construction of collateral inheritance tax laws in other jurisdictions."

By a stipulation in the record it is agreed by the parties that if a collateral inheritance tax is held to be payable upon the value of the estate at the time of the death of Frances E. Lilly, the same will be paid upon the amount of $80,560. In our opinion, a collateral inheritance tax of five per cent. should be paid to the State on the sum of $80,560. This being the decree of the lower court, the same will be affirmed.

*Decree affirmed, with costs to the appellee.*