EDWIN R. DOWNES, REGISTER OF WILLS, *v.*
SAFE DEPOSIT & TRUST COMPANY.

SAFE DEPOSIT & TRUST COMPANY *v.* EDWIN
R. DOWNES, REGISTER OF WILLS.
[Nos. 99, 100, October Term, 1932.]

294

*Decided March 1st, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Sloan, JJ.

*William L. Henderson, Assistant Attorney General,* with whom was *William Preston Lane, Jr., Attorney General,* on the brief, for Edwin R. Downes.

*Charles McH. Howard,* for the Safe Deposit and Trust Company.

PATTISON, J., delivered the opinion of the Court.

William F. Southcomb of Baltimore City, died November 2nd, 1931, testate, leaving practically his entire estate to collaterals.

Upon the issuance of letters testamentary upon his estate, an inventory was returned on December 15th, 1931. His estate consisted largely of stocks and bonds. These were valued as of the date of the testator's death. On July 15th, 1932, the orphans' court passed its order, authorizing a re-appraisal of the securities as of that date. This was done because of the great shrinkage in the value of the securities since their appraisal in December, 1931, and, as stated by the Attorney General in his brief, was done over his objections, in order that the questions hereinafter mentioned might be judicially determined. The executor, in distributing the estate, calculated the collateral inheritance tax as well as the executor's commissions, of which a part is payable to the State, upon the value of the securities as shown by the appraisal made under the order of July 15th, 1932. It is shown by a comparison of the two appraisals that the value of the securities shrunk to the extent of $60,121.35. If the collateral inheritance tax and the executor's commissions should have been computed upon the earlier appraisal and not upon the later one, then there is due to the register of wills the sum of $2,945.90 by way of collateral inheritance tax, and $120.24 by way of taxes on commissions.

The questions upon which of these appraisals the collateral inheritance tax and the executor's commissions should be re-spectively computed were submitted on "case stated," as was done in *Williams v. State,* 144 Md. 18, 123 A. 457, to the Superior Court of Baltimore City. That court, after a hear-ing, held that the collateral inheritance tax was properly computed upon the appraisal made under the order of July 15th, 1932, but held that the executor's commissions should have been computed on the earlier appraisal. As a result of this decision, the State has appealed from the judgment affecting the collateral inheritance tax (No. 99), and the

executor has appealed from the judgment affecting the executor's commissions (No. 100).

The questions therefore presented by this appeal are:

(1) Is the State entitled to additional collateral inheritance tax of five per cent. upon the difference between such re-appraised values of the securities distributed to the residuary legatee, and the higher values of the original inventory?

(2) Is the State entitled to additional tax on commissions, similarly computed?

The following sections of article 81 of the present Code of Maryland reflect upon the first of these questions.

Section 105 of article 81 of the Code (Supp. 1929) provides that "all estates, real, personal and mixed * * * passing from any person who may die seised and possessed thereof * * * or any part of such estate or estates * * * transferred by deed, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor, to any person or persons * * * other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor, bargainor or testator * * * shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate * * * and all executors, administrators * * * shall only be discharged from liability for the amount of such tax, the payment of which they be charged with, by paying the same for the use of this State, as hereinafter directed; provided, that no estate which may be valued at a less sum than five hundred dollars shall be subject to the tax imposed by this section. * * *"

Section 106 provides that "every executor to whom administration may be granted, before he pays any legacy or distributive share of any estate liable to the tax imposed by section 105, shall pay to the register of wills of the proper county or city, five per centum of every hundred dollars he may hold for distribution among the distributees or legatees, except as hereinafter provided, and at that rate for any less sum, for the use of the state; *provided that such tax shall*

*not be paid or collected upon any increase in value of the estate or any income thereon accrued subsequent to the date of the death of the decedent."*

Section 107 provides that "when any species of property other than money or real estate shall be subject to said tax, the tax shall be paid on the appraised value thereof as filed in the office of the register of wills of the proper county or city, *which appraisement shall be subject to modification by the orphans' court appointing such appraisers, for good cause shown.* * * *"

Section 105 is practically the same as section 102 of article 81 of the Code of 1888, except that the present Code increases the rate from two and a half (as provided in the earlier Code) to five per centum.

What is said of section 105 is likewise true as to section 106 (Code 1888, art. 81, sec. 103), with the addition resulting from the Acts of 1927, chapter 43, which we have italicized.

Section 107 is like section 104 of the Code of 1888, with the italicized words added thereto by the Acts of 1929, chapter 226.

In the determination of the different questions arising thereunder, this court has been called upon a number of times to construe the above-mentioned sections of the Code, and, while the questions here involved have never been directly decided by it, there have been statements in the decisions of those cases which we regard as very helpful in deciding the questions here presented.

In *State v. Dalrymple,* 70 Md. 295, 17 A. 82, 83, where these provisions of the Code were before this court for its consideration, Judge McSherry said: "The act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our laws should pay a certain premium for its enjoyment. In other words, one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is that there shall be paid out of such property a tax * * * into the treasury of

the state." It "is not a tax upon the property itself, but is merely the price exacted by the state for the privilege accorded in permitting property so situated to be transmitted by will, or by descent or distribution. That this is so is abundantly clear from the language of the statute and its several provisions. * * * And the amount of the tax will depend upon the sum in the hands of the appellees payable to the legatee."

Judge Briscoe, speaking for this court in *Fisher v. State,* 106 Md. 104, 66 A. 661, 663, said: "The tax is imposed upon the clear value of all estates passing by will or otherwise, at the time it is transferred and received by the collateral beneficiary. * * * In other words, the tax is imposed upon the clear value of the estate, at the 'passing and transferring' of the estate to the collateral beneficiary."

In *Safe Dep. & Tr. Co. v. State,* 143 Md. 644, 123 A. 50, the estate of the decedent increased in value after his death, and its value at the time of distribution was greater than the value placed upon it when the inventory was filed. The question was, Should the collateral inheritance tax be computed on such additional sum, or confined to the appraised value at the time of his death as shown by the inventory? Judge Urner, speaking for the court, said: "We can have no doubt as to the correctness of the lower court's decision that the tax applies to the entire estate passing to the distributees. * * * In order that the theory and purpose of the tax * * * may be given full effect, it seems clear that the tax should be computed on the basis of the whole amount of the estate passing to the collateral recipients. * * * It is with the estate as it passes to the beneficiary, and not merely with the estate as it passes from the person who dies 'seised and possessed thereof,' that the collateral inheritance tax law is concerned."

In *Good Samaritan Hospital v. Dugan,* 146 Md. 374, 126 A. 85, 88, this court said: "Under the statute * * * the tax is only levied against that part of the decedent's estate passing to those of a class specially named in the act, upon whom the requirement is made to pay the tax thereon, and not against that part of his estate passing to others exempted

from its provisions. * * * The executor or administrator pays the tax, but he pays it for the legatees or heir, either out of his legacy or distributive share of the estate, or with money collected from him. * * * As it appears to us, the logical conclusion is that the tax thereby imposed is upon the right of the legatee or heir to receive his legacy or his share of the estate and not an estate tax. * * *"

In *Lilly v. State,* 156 Md. 104, 143 A. 661, 665, Judge Digges, speaking for the court, repeating what had been said a number of times, stated that "the tax is imposed upon the clear value of all estates passing by will or otherwise, at the time it is transferred and received by the collateral beneficiary." See *Darnall v. Connor,* 161 Md. 213, 155 A. 894.

It is true that, after the decision in *Safe Dep. & Tr. Co. v. State, supra,* in which it was held that the tax should be computed upon the whole amount of the estate passing to the collateral recipients, including the increased value of the estate since the death of the decedent, the law was amended by the Acts of 1927, c. 43, providing that "such tax shall not be paid or collected upon any increase in value of the estate or any income accrued thereon subsequent to the date of death of the decedent." This amendment, of course, exempted from the payment of such tax any increase in an estate after the death of the decedent, but this was as far as it went. It did not change the essential nature of the tax, nor did it provide that, where there was a shrinkage in the value of the estate after the death of the decedent, the beneficiary should pay a tax on an amount greater than that which he received. It went only to the extent of excusing the beneficiary from the payment of the tax upon the increase in the value of the estate after the decedent's death, but did not impose upon him the burden of paying a tax upon an amount larger than that which he received. Had it been the intention of the Legislature to impose such a burden upon him, we may assume that it would have done so; and the fact that it did not warrants the conclusion that it did not intend to do so.

The provision in section 107, that "the tax shall be paid on the appraised value thereof as filed in the office of the

register of wills of the proper county or city" is found in section 104 of article 81 of the Code of 1888. Consequently, the numerous decisions of this court since that time, holding that the tax should be computed upon the clear value of the property at the time of distribution, involved the construction of this language, and the addition thereto resulting from the passage of the Acts of 1929, to the effect that such appraisement "shall be subject to modification by the orphans' court appointing such appraisers, for good cause shown," furnishes no support to the contention of the State. The inventory or appraisement to which reference is made is required under section 211 of article 93 of the Code, "in order that all persons interested in the personal estate may have an opportunity of knowing as nearly as may be the amount of the same." This was the sole purpose and object of the inventory or appraisement, and the act contains no provisions from which the conclusion may properly be reached that the value of the estate at the time of distribution was necessarily to be determined by such appraisal, or that an appraisal could not thereafter be made to ascertain the value of the estate at the time of its passing into the hands of the beneficiaries; the ascertainment being essential under the authorities stated.

In our opinion, the trial court correctly held (in No. 99) that the collateral inheritance tax was payable upon the appraisal made under the order of July 15th, 1932, and not under the earlier appraisement.

We will next consider the second question, whether the State is entitled to any tax on commissions in addition to that already paid to it resulting from a computation on the basis of the first appraisal made as of the death of the decedent.

In section 101 of article 81 it is provided that: "All commissions allowed to executors by the orphans' courts of this state shall, except as provided in section 130 of this article, be subject to a tax, for the benefit of the state, of an amount equal to one per cent. on the first twenty thousand ($20,000)

dollars of the estate, and one-fifth of one per cent. on the balance of the estate. * * *"

In section 5 of article 93 of the Code, which regulates the commissions to executors and administrators, it is provided that the commissions to be allowed shall be in the discretion of the court "not under two per cent. nor exceeding ten per cent.' on the first twenty thousand dollars of the estate, and on the balance of the estate not more than two per cent."

Section 5 of article 93 of the Code of 1860 provided that "his (the executor's) commissions, which shall be at the discretion of the court, not under five per cent. nor exceeding ten per cent. on the amount of the inventory or inventories, excluding what is lost or perished," was repealed by the Act of 1884, chapter 470, which now, with the amendments thereto, is codified as section 5 of article 93 of the Code of 1924, and, as shown by the enactment made in lieu thereof (section 5 of article 93 of the Code of 1924), the executor's commission is no longer computed upon the inventory, but is allowed on the amount "of the estate".

In *Hardt v. Birely,* 72 Md. 138, 19 A. 606, 607, this court, construing the Act of 1884, ch. 470, codified as article 93, section 5, of the Code of 1888, said: "Considering this section alone, independent of any decisions of this court construing the law regulating the allowance of executors' commissions prior to the act of 1884, we do not think there can be any doubt as to its meaning. The executor is to have commissions on the amount of the estate which comes into his hands in the course of administration, and with which he is properly chargeable, and for which his bond is responsible." Mr. Bagby, in his work on *Executors and Administrators,* sec. 101, page 154 (1st Ed.), construing the statute as it now stands in the light of *Hardt v. Birely, supra,* said: "Commissions are now allowed on the amount of the estate which comes into the executor's hands and with which he is chargeable and not on the amount of the inventory."

In *York v. Md. Trust Co.,* 150 Md. 354, 133 A. 128, 131, the decedent owned approximately $1,700,000 worth of property, most of which consisted of large blocks of stock in vari-

ous Standard Oil Companies, and he owed about $1,000,000 to Messrs. Jessop & Lamont of New York, and various other bankers, who held most of his stock as collateral security for his loans. This stock, at the time of the decedent's death, was in the possession of the pledgees, and was listed in the inventory of the decedent's property. The question there was whether the executor should be allowed commissions on this pledged stock. In respect thereto, this court, quoting from 23 *Corpus Juris*, 1148, said: " 'An executor or administrator qualifying in the state of the domicil of the testator has title ultimately to the assets, wherever they may be situated, subject, however, to the satisfaction of local creditors and claimants, and ought to consider all the chattels of his decedent wheresoever situated as assets, if by reasonable diligence he may pursue and possess himself of them.' In the present case the executor did pursue the decedent's foreign assets, secured the consent of the creditors who held them to dispose of them in accordance with the executor's orders and directions, and by reason of its diligence, care, and skill these assets netted the estate a profit in excess of $47,000. Under these circumstances, we think the orphans' court properly allowed these assets to be inventoried at their market value. * * * We express no opinion as to whether such securities should be deemed assets in a case where the executor exercised no control over their disposition, and only received the net proceeds resulting from their sale by the foreign creditors who held them; nor are we to be understood as passing on the question of whether the executor's bond in this case would have been responsible for the negligent sale of the securities, or liable in the event of the failure of any of the bankers who held them. None of these questions are before us and we are not undertaking to decide them. We simply hold that under the facts and circumstances of this case, as disclosed by the record, the Orphans' Court of Baltimore City committed no error in permitting these securities to be inventoried at their appraised value, and in allowing commissions on this amount."

We have quoted very fully from this case for the reason that the appellee, the register of wills of Baltimore City, has laid much stress upon the language therein used that the court "allowed these assets to be inventoried at their market value" or that "the orphans' court * * * committed no error in permitting these securities to be inventoried at their appraised value, and in allowing commissions on this amount." These expressions, used in the connection in which they were there used, as shown from the quoted language of the opinion, furnish no aid or support to the appellant's contention that it is upon the inventory that the commissions of the executor should be computed. The commissions were to be computed upon the amount of the estate, and if the appraisal in the inventory was a correct valuation of the estate, there was no reason why such value should not have been taken and considered by the court in determining the amount of commissions to be allowed. By these expressions the court did not mean to say that the value of the property as stated in the inventory, if wrong, was to be used as a basis for the allowance of commission.

The Superior Court, we think, erred in using the appraisal returned as of December 15th, 1931, as the basis upon which to compute the tax on commissions to which the State was entitled.

We therefore will affirm the judgment of the Superior Court in No. 99, and reverse its judgment in No. 100.

> *The judgment in No. 99 affirmed, the judgment in No. 100 reversed, and case remanded; costs to be paid out of the estate.*

DIGGES, J., dissents in No. 100.