SHAUGHNESSY, Register of Wills, *v.* PERLMAN et al., Trustees

[No. 49, October Term, 1951.]

*Decided December 7, 1951.*

*Rehearing denied January 9, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *Ward B. Coe, Jr., Assistant Attorney General,* for appellant.

*Harry Troth Gross* and *George Gump,* with whom were *Eli Frank, Jr.,* and *Frank & Oppenheimer* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

The question raised on this appeal is whether the Maryland inheritance tax on property passing in remainder to a taxable remainderman, upon the death of a taxable life tenant, is to be computed upon the value of such property as of the date of the death of the testatrix, or as of the date it vests in possession.

There is no dispute as to the facts. Claribel Cone, a resident of Baltimore City, died September 20, 1929. By the Thirteenth Item of her will, she left her art collection to her sister, Etta Cone, for life, giving her an unrestricted power of appointment over it by will or deed. By the Fourteenth Item she left the sum of $100,000 in trust to pay the income to Etta for life,

and directed that, upon Etta's death, the fund be paid over to the appointee of the art collection, provided that said fund "and all rents, issues and profits resulting from the investment thereof" be accepted by the appointee as a trust fund to house, preserve, maintain and care for the collection. By the Sixteenth Item of the will, she left the residue of her estate in trust for Etta for life, remainder to the Moses H. Cone Memorial Hospital of Greensboro, North Carolina.

Etta Cone died August 31, 1949. By the Third and Fourth Items of her will, she appointed the art collection and the $100,000 fund to the Baltimore Museum of Art, Incorporated, and the Mayor and City Council of Baltimore, with the stipulation that the fund be used for housing, preserving, maintaining and caring for the collection.

On Claribel's death in 1929, the now famous and extremely valuable art collection was appraised at only $19,596 and the entire property in which Etta had a life estate, including the art collection and the $100,000 trust fund, was then appraised at $242,666.15. The value of the residue was appraised at $123,070.15. The proportional value of Etta's life estate was fixed by the Orphans' Court (under section 118, Article 81, 1929 suppl. to Bagby's Code) at three-tenths of the entire estate or $72,799.84. She paid an inheritance tax at the rate of five per cent of this figure, or $3,639.99. No tax was paid on the remainder. Since then, not only the art collection but the entire estate has increased tremendously in value. The appellant concedes that there is no tax due on the art collection or the $100,000 fund, or any increase or increment thereof, passing to and accepted by the Museum of Art and the City, by virtue of the exemption contained in Section 110, Article 81 of the Code (1947 Suppl.), as enacted by Chapter 964 of the Acts of 1943 and expressly made applicable to "property passing or passed at deaths which occurred before the passage of this Act, in those instances where the property has not yet been distributed or where the in-

heritance taxes previously imposed have not yet been paid." The trustees concede that the exemption statute does not apply to the Moses H. Cone Memorial Hospital, none of whose activities and work are carried on in Maryland. Both sides concede that the rate of tax is five per cent, the rate in effect at Claribel's death. The Register of Wills contends that a tax at the rate of five per cent is now payable upon seven-tenths of the present appraised value of the property passing to the Memorial Hospital. The trustees contend that a tax at the rate of five per cent is now payable upon seven-tenths of the entire estate, as valued at the death of Claribel. The Chancellor so held, calculating the tax at $8,493.32. This calculation, of course, includes the property now passing to the Museum of Art and the City, at its appraised value as of the death of Claribel. There was no cross appeal.

The appellees rely chiefly upon the language of section 118, Article 81, Bagby's Code (1929 suppl.), as enacted by Chapter 226, Acts of 1929, and in effect at Claribel's death: "Whenever any estate, real, personal or mixed, of a decedent shall be subject to the tax mentioned in this sub-title, and there be a life estate or interest for a term of years, or a contingent interest, given to one party and the remainder, or reversionary interest, to another party, the Orphans' Court of the county or city in which administration is granted shall determine at such time as it shall think proper what proportion the party entitled to said life estate, or interest for a term of years, or contingent interest, shall pay of said tax, and the party entitled to said life estate or interest for a term of years, or other contingent interest, shall within thirty days after the date of such determination pay to the register of wills his proportion of said tax; and thereafter the said court shall from time to time after the determination of the preceding estate and as the remainder of said estate shall vest in the party or parties entitled in remainder or reversion determine what proportion of the residue of said tax shall be paid

by the party or parties in whom the estate shall so vest; and each of the parties successively entitled to remainder or reversion shall pay his proportion of said tax to the register of wills within thirty days after the date of such determination as to him; and the proportion of the tax so determined to be paid by the party entitled to the life interest or estate shall be and remain a lien upon such interest or estate for the period of four years after the date of the death of the decedent, who shall have died seized and possessed of the property, and the proportion of the tax so determined to be paid by the persons respectively entitled to the remainder, or reversionary interest, shall be a lien on such interest for the period of four years from the date in which such interest shall vest in possession. * * *"

The appellees argue that this language plainly contemplates the payment of only one tax, part of which is payable by a life tenant and the balance by the remainderman, or successive remaindermen. In short, they contend that the word "tax" means the total amount payable in money. The appellant argues that the language, construed in the light of the legislative history and the previous interpretations of this court, imposes a series of taxes, based upon the appraised value of the property at the time it is received, or vests in possession.

Section 118, of course, does not impose the tax, but deals with its apportionment and time of payment. The tax "mentioned in this sub-title" [Collateral Inheritance Tax] is laid by Section 105, Article 81 (Bagby's Code, 1929 suppl.), which reads: "All estates, real, personal and mixed, money, public and private securities for money of every kind passing from any person who may die seized and possessed thereof, being in this State, either by will or under the intestate laws of this State * * * in trust or otherwise * * * shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate, money or securities, and all executors, administrators, trustees and other persons making distribution, shall only be discharged from lia-

bility for the amount of such tax, the payment of which they be charged with, by paying the same for the use of this State, as hereinafter directed; * * *." The basic language in this Section has remained the same since its first enactment by Chapter 237, Acts of 1844.

There can be no doubt that this language has always been construed to mean that the tax is imposed, not upon the property but upon the right to receive it. "The Act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our laws shall pay a certain premium for its enjoyment." *State v. Dalrymple,* 70 Md. 294, 299, 17 A. 82, 83, 3 L. R. A. 372. It was also said in that case 70 Md. p. 305, 17 A. at page 84: "the amount of the tax will depend upon the sum in the hands of the appellees [administrators] payable to the legatees." See also *Safe Deposit and Trust Co. v. State,* 143 Md. 644, 123 A. 50, 32 A. L. R. 847, and *Downes v. Safe Deposit and Trust Co.,* 164 Md. 293, 164 A. 874, 86 A. L. R. 1024. In *Hospital v. Dugan,* 146 Md. 374, 126 A. 85, it was held that the tax was not an estate tax but a legacy tax, imposed upon the right of the legatee or heir to receive it. In *Bouse v. Hull,* 168 Md. 1, 7, 176 A. 645, 647, holding that no tax was due where a collateral legatee renounced and the property passed to direct descendants, the court said: "So, when the court * * * speaks of the 'right' of the legatee or heir to receive his legacy or his share of the estate, it refers to a 'right' which not only may, but in fact does, become consummate in possession or the right to possession; otherwise the tax would be, not upon the right to receive, but upon the right to elect whether to receive or not. * * *." In *Hart v. Mercantile Trust Co.,* 180 Md. 218, 23 A. 2d 682, it was held that the tax was to be calculated upon the amount passing under a compromise between the caveators and legatees, rather than upon the amount bequeathed in the will.

The pertinent language of Section 118 has been in effect since the passage of Chapter 455, Acts of 1880.

For the history of the section prior to 1880, see Chapter 483, Acts of 1874; Chapter 222, Acts of 1847; and Chapter 344, Acts of 1846. Prior to 1880, the Orphans' Court was directed to determine "in its discretion and at such time as it shall think proper, what proportion each party * * * shall pay of said tax * * * and any party entitled in remainder or reversion, shall be required to pay his proportion of said tax within the same time as though his interest had vested in possession." By the Act of 1880, the last clause was eliminated, so that there was no longer any requirement of prepayment. The obligation of the remainderman to pay was deferred until his interest vested in possession. The "proportion" in each case referred to the fractional valuation of the life expectancy. The remainderman was still allowed a credit in this way for the payment made by the life tenant, although there was no constitutional reason why his obligation to pay for the benefit received should be thus diminished because a third person, the life tenant, had previously paid for a different benefit received.

We are still faced with the difficulty, however, that although the Act of 1880 did not expressly refer to the time of appraisal of the property passing, it retained the words "tax" and "residue of said tax", which in the Act of 1874 necessarily referred to the initial determination because only one was called for. But we think the words are susceptible of a collective or distributive meaning. As noted in *Darnall v. Connor,* 161 Md. 210, 212, 155 A. 894, 895: "In the preamble to the original enactment [Chapter 237, Acts of 1844] the tax was described comprehensively as a tax on 'collateral inheritances, distributive shares and legacies * * *.'" Thus "the tax mentioned in this subtitle" may be said to comprehend the entire series of obligations imposed upon successive takers.

That was, in effect, the decision in *Fisher v. State,* 1907, 106 Md. 104, 66 A. 661. Although in that case the life estate to the widow was non-taxable, so that the Act of 1880 was not strictly applicable, it was held that

the tax payable by the remainderman should be paid on the whole estate at its enhanced value as of the time it vested in possession. The testator having died in 1884, Section 119 (as enacted by Chapter 493, Acts of 1894) was not applicable, and the result was reached by an interpretation of Section 105, as it then stood. The effect of Section 119, as enacted in 1894, was to give to the remainderman an option to prepay the tax and obtain credit for the proportion allocated to the non-taxable life estate. To this extent, it reflected the policy announced in Section 118. But Section 119 provides that if the remainderman "shall fail to pay said tax, as above provided, then such person or object shall at the time when he, she or it comes into possession of such estate, pay a tax on the whole value thereof; * * *." In *Lilly v. State,* 156 Md. 94, 143 A. 661, it was held that the tax was to be calculated upon the value appraised as of the time it vested in possession.

We think the same thing is true under Section 118. The two sections are part of a comprehensive tax law. We see no reason, where both are silent as to the time of valuation, to construe them differently in this respect. The effect of this construction is that the taker pays on the basis of what he gets, whether more or less than the value at the date of the testator's death. The contrary construction might require a remainderman to pay on a value that had entirely vanished at the time the remainder vested in possession. Cf. *Downes v. Safe Deposit and Trust Company,* 164 Md. 293, 299, 164 A. 874, 86 A. L. R. 1024.

In practice, the administrative authorities seem to have construed the two sections together. For example, Attorney General Ritchie ruled in 1917 that there was an option of prepayment under Section 118. He said: "It has, I think always been customary to permit this to be done." 2 Opinions of the Attorney General 331. If not prepaid, the remainderman was required to pay on the appraised valuation at the time of distribution, with a credit for the payment made by the life tenant.

10 Opinions of the Attorney General 293; 16 Opinions of the Attorney General 352; 20 Opinions of the Attorney General 828; 22 Opinions of the Attorney General 746; 24 Opinions of the Attorney General 874. It is true that when a direct inheritance tax was imposed by Chapter 90, Acts of 1935, the language of Section 118 was changed to provide that the Orphans' Court should "determine the value" of each successive estate, and the two sections were amalgamated in Chapter 124, Acts of 1936 (Special Session). We think it cannot be maintained, however, that these clarifying amendments worked a change in the preexisting law or practice.

The appellees rely, however, upon the amendment made by Chapter 43 of the Acts of 1927. This amendment was to Section 125, Article 81, Bagby's Code of 1924. It appeared in the codification made by Chapter 226, Acts of 1929, as Section 106, but was repealed by Chapter 520, Acts of 1935, effective May 17 of that year. Section 106 provided generally that "every executor to whom administration may be granted before he pays any legacy or distributive share of any estate liable to the tax imposed by Section 105, shall pay to the Register of Wills of the proper county or city, five *per centum* of every one hundred dollars he may hold for distribution among the distributees or legatees except as hereinafter provided * * *." The provision introduced in 1927 and repealed in 1935 read: "Such tax shall not be paid or collected upon any increase in value of the estate or income thereon accrued subsequent to the date of death of the decedent." The appellant contends that the amendment relates solely to increase or income during the period of administration.

Not only is there strong support for this contention in the fact that the entire section deals only with the duty of an executor or administrator, which necessarily terminates upon distribution to trustees, but this court has so stated. In *Dryden v. Baltimore Trust Company,* 157 Md. 559, 563, 146 A. 752, 753, it was said: "It is clearly apparent that the legislative purpose was to

amend the effect of the prior law as determined by this court, by excluding from the payment of the collateral inheritance tax any increase in value of the estate or income accrued thereon subsequent to the death of the testator, that is, during the period of administration." We think the amendment has no application to distributions made by a trustee upon the falling in of a life estate. While the point was not discussed in the opinion it was held in *Lilly v. State, supra,* that the tax was payable upon the appraised value as of the date when the remainder vested in possession. The life tenant died on August 25, 1927, after the Act of 1927 was in effect. The applicability of the Act to trustees was argued in the appellant's brief (p. 22). The language of Section 106, "every executor to whom administration may be granted", may be contrasted with the language of Section 105, "all executors, administrators, trustees and other persons making distribution".

Since we conclude that seven-tenths of the property distributed to the Memorial Hospital is taxable upon its value as of the death of Etta Cone, by construction of the statutes in effect at the death of the original testatrix, no constitutional question is presented and it is unnecessary to discuss the applicability of *Safe Deposit and Trust Co. v. Bouse,* 181 Md. 351, 29 A. 2d 906, and *Rosenburg v. Bouse,* 172 Md. 530, 192 A. 323, or the other points argued.

*Decree reversed and case remanded, with costs.*

MARKELL, J., delivered the following dissenting opinion, in which COLLINS, J., concurred.

Like most taxes, the Maryland collateral inheritance tax is the product of two factors, the tax rate and the tax base. When section 118 required the Orphans' Court to "determine * * * what proportion the [life tenant] shall pay of said tax" and thereafter from time to time "what proportion of the residue of said tax shall be paid by the [remaindermen]" and provided that

each of the remaindermen "shall pay his proportion of said tax", "tax" meant tax and not "tax rate", one of the two factors of which the tax is the product. A taxpayer does not pay a "tax rate"; he pays a "tax".

The plain words of section 118 cannot be changed by giving them the meaning of the different words of sections 119 and 105 and the different previous judicial construction of section 105. When ambiguity exists, three sections relating to the same subject should, if possible, be construed in harmony with each other. When no ambiguity exists and the three sections are in terms different and irreconcilable, only the legislature can substitute uniform provisions. This was done by the Act of 1935 and the Act of 1936. Code of 1939, Article 81, secs. 124, 125. The Attorney General does not contend that these acts are applicable retrospectively to the estate of a decedent who died in 1929.

It is not in point to invoke the general construction of section 105 in the *Fisher* case and other cases. From 1880 until 1936 section 118 was flatly contrary to the basic theory of the law—indeed to arithmetic itself—in giving a remainderman a double offset for deferred enjoyment in (1) deferment of payment to the time of enjoyment, and also (2) deduction of the value of the life estate, without payment in advance of enjoyment. Section 119 is no more in point. From 1894 to 1935, section 119, unlike section 118, gave the remainderman the choice of two offsets, either deferment of payment or discount for advance payment by deduction of the value of the life estate, but not both. It is no more proper to construe unlikes alike than to construe likes as unlike. In the circumstances, the only rule of construction is, *Ita lex scripta est.*

Administrative construction of a statute cannot change the plain meaning of the statute. Moreover, opinions of the Attorney General no earlier than 1917 do not go far toward establishing uniform administration of a statute in force since 1880.

630

A statute imposing a tax should be construed most strongly in favor of the citizen and against the State. *Maryland Unemployment Compensation Board v. Albrecht,* 183 Md. 87, 92, 36 A. 2d 666. This is the converse of the rule of construction of tax exemptions.

The decree should be affirmed.

Judge COLLINS authorizes me to say that he concurs in this opinion.