536 A.2d 658

**Jack M. WILSON**

v.

**Doris K. LEWIS, Register of Wills for Dorchester County.**

**No. 109, Sept. Term, 1987.**

Court of Appeals of Maryland.

Feb. 9, 1988.

548

Donald H. Olson (Richard L. Counts, III and Miller, Wheeler, Thompson & Thompson, on the brief), Easton, for appellant.

Susan P. Whiteford, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and James G. Klair, Asst. Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Retired, Specially Assigned.

## I

Maryland imposes a tax, usually called a "lineal inheritance tax," on

> any and all property, having a taxable situs in this State, passing at the death of any resident or nonresident decedent, in trust or otherwise, to or for the use of the father, mother, husband, wife, children, lineal descendants of such decedent or any stepchild or stepparent of the decedent.

Md.Code (1957, 1980 Repl.Vol.) Art. 81, § 149(a).[1] With certain exemptions, it also imposes a tax, usually called a "collateral inheritance tax," on such property passing to or for the use of persons other than those subject to the lineal tax. Code, Art. 81, § 150(a). Section 151 of Art. 81 designates the property to which these taxes apply. It covers, with exceptions not here relevant,

> all tangible or intangible property, real or personal, passing either by will or under the intestate laws of this State, or by deed, gift, grant, bargain or sale, *made in contem-*

---

**1.** "[G]randfather" and "grandmother" were inserted following "children" and "the" was substituted for "such" following "lineal descendants of" by Chapter 183, Acts 1987.

*plation of death,* or intended to take effect in possession or enjoyment at or after the death of a decedent, including property in which the decedent, prior to his death, had an interest as joint tenant or tenant in common, and including property over which the decedent retained any dominion during his lifetime. . . .

*Id.* (emphasis added). The statute explains that, with certain exceptions,

> [t]he reservation of a beneficial interest in favor of the decedent or of a power of revocation, absolute or conditional or of a power of appointment by will or otherwise, in or over any property passing subject to the tax . . . shall be deemed to constitute dominion within the meaning of this section. . . .

*Id.* The statute looks further to its "contemplation of death" proviso. It creates the rebuttable presumption that

> [a]ny transfer of a material part of his property, in the nature of a final disposition or distribution thereof, made by a decedent within two years prior to his death, except a bona fide sale for an adequate and full consideration in money or money's worth, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section.

*Id.* If the interests "are not otherwise specified or fixed by law, the interest passing shall be determined by dividing the value of the property by the number of joint tenants." *Id.*

## II

At the unexpected death of his wife, Richard W. Lawrence became the sole owner of substantial funds deposited in several financial institutions and shares of stock in two corporations. Lawrence was not in good health, and shortly after a visit to his doctor, he sought information from a friend of long standing, the Register of Wills for the county in which he resided. According to an affidavit by the Register, he told her that "he was concerned about the tax impact on his deceased wife's nephew, Jack Wilson, who would be his beneficiary." He inquired whether the inheri-

tance taxes would be the same as those he paid on his wife's estate. Told that the taxes would be ten times greater, Lawrence asked "if it would lessen the tax burden on Jack if he put some accounts in joint names while he was still alive." The Register gave her version of the law. She "explained" that

if he put the accounts in joint names and survived for two years, his nephew would pay inheritance tax on only one-half of the total value of the joint assets, rather than on the full value.

She also "explained" that

if [Lawrence] died in the next two years his nephew would be required to pay an inheritance tax on the entire value of the accounts as a gift in contemplation of death.

She further "explained" that

even if he were to die within two years Jack would eliminate the tax on commission and that portion of his estate would escape probate administration.

Lawrence said "that he would 'Take his Chances' on surviving two years, but that Jack would at least save tax on commission."

Shortly after Lawrence discussed the matter with the Register, he deposited a substantial amount of cash in several accounts in a bank and a savings and loan association. In effect, the accounts specified that the funds were held in trust for Lawrence and Wilson as joint owners, subject to the order of either, balance at the death of either to belong to the survivor. He also transferred certain shares of stock to his name and that of Wilson as joint tenants, but during the existence of the joint tenancy, the signature of each tenant was required to transfer the shares.

Lawrence lost his gamble. He died less than a year after he created the joint tenancies. The Register, true to her interpretation of the law as she had explained it to Lawrence, imposed a collateral inheritance tax on the full amount of the property passing to Wilson by reason of the

tenancies. Wilson paid under protest. He acknowledged that the tax was due on the full amount of the value of the stocks because the consent of both joint tenants was required to transfer them. But, he claimed, the tax was payable on only one half of the cash passing to him. The Register denied his claim for a refund. He looked to the Maryland Tax Court, and it, on undisputed facts, including a recounting of the discussion between Lawrence and the Register, affirmed the action of the Register of Wills. Wilson was not content; he sought relief in the Circuit Court for Dorchester County. It affirmed the Tax Court. Wilson was still not convinced. He noted an appeal to the Court of Special Appeals. We granted certiorari before decision by that court.

## III

The question is whether, as a matter of law, the collateral inheritance tax payable by Wilson was due on the entire amount of the cash passing to Wilson under the joint accounts upon the death of Lawrence or only on half of that total amount. It does not appear to be disputed that the tax would be payable upon the entire amount if the joint tenancies were created by Lawrence in contemplation of his death.

The Register of Wills on her initial determination and the tax court and the circuit court on the subsequent appeals, all follow the same path. Each of them looks to that part of Art. 81, § 151 which establishes the rebuttable presumption that any transfer of a material part of a decedent's property within two years prior to his death is deemed to have been made in contemplation of death. The Register and the courts affirming her are of a mind that the presumption was not rebutted. Therefore, since the transfers were made by Lawrence within two years of his death, the presumption operated to declare them made in contemplation of death so that the tax was payable on the entire amount.

Wilson also looks to the presumption. But he points out that the presumption is governed by three requisites. The transfer must be

1) of a material part of the decedent's property;

2) in the nature of a final disposition or distribution; and

3) made within two years prior to his death.

A bona fide sale for an adequate and full consideration in money or money's worth is excepted from the presumption. Wilson concedes that the exception is not applicable and that requisites one and three are met. But, he urges, the transfers were not in the nature of a final distribution or disposition because the funds were subject to the order of Lawrence. Lawrence could, during his lifetime, withdraw the entire amounts and thereby abolish the joint tenancy. Because of this power of revocation, he urges, the presumption that the transfers were made in contemplation of death because Lawrence died within two years of their making, did not come into play. It follows, according to Wilson's reasoning, that the transfers, not being subject to the presumption, were not made in contemplation of death. Thus, the tax is payable on only one-half of the balances in the accounts.

We reach the same conclusion as did the Register, the Tax Court and the circuit court affirming her determination, namely that a collateral inheritance tax is payable by Wilson on the entire amount of the proceeds of the joint tenancies. However, we reach that conclusion by a different route.

## IV

In construing a statute

the cardinal rule is to ascertain and carry out the real legislative intention.... The primary source of legislative intent is, of course, the language of the statute itself.... A plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation.

*Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 73, 517 A.2d 730 (1986) (citations omitted). In other words, we first seek to discover the legislative purpose, aim, or policy by looking at the words of the statute. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). *See Carolina Freight Carriers Corp., et al. v. Keane, et al.,* 311 Md. 335, 338–39, 534 A.2d 1337 (1988).

▮ The purpose of the collateral inheritance tax is to raise revenue for the State. *Clarke v. Union Trust Co. of D.C.,* 192 Md. 127, 138, 63 A.2d 635 (1949). The purport of the statute is that collateral kindred should pay a certain premium for the privilege of acquiring a decedent's property which is subject to the laws of Maryland. *Safe Dep. & Trust Co. v. State,* 143 Md. 644, 646, 123 A. 50 (1923). The tax is a succession tax imposed on the right to receive property, *Pohlhaus v. Register of Wills,* 248 Md. 625, 627, 238 A.2d 91 (1968), and it is based on the value of property at the time of distribution, *Downes v. Safe Dep. & Tr. Co.,* 164 Md. 293, 298, 164 A. 874 (1933). *See Bouse v. Hutzler,* 180 Md. 682, 688, 26 A.2d 767 (1942).

▮ In focusing on the "presumption" provisions of § 151, the parties and the courts here disregarded the preceding provisions of the section. Those provisions, set out *supra* herein, covered all bases to assure that the purpose of the inheritance tax statutes was obtained and their purport satisfied. In clear and unambiguous language, the legislature declared a general rule that the tax imposed applied to the transfer of property made in contemplation of death. If the property passed by reason of such a transfer, the tax was payable on the value of property received.

▮ In the instant case, the unique circumstances and undisputed facts make perfectly clear that Lawrence transferred his property in contemplation of his death. Therefore, the statutory presumption with its attendant conditions need not be reached here. The property transferred was fully taxable. The denial of a refund by the Register

of Wills was proper, and the affirmance of that denial by the Maryland Tax Court and the Circuit Court for Dorchester County was not erroneous.

JUDGMENT OF THE CIRCUIT COURT FOR DORCHESTER COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.