MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, Trustee u/w Edward F. Burke *v.* REGISTER OF WILLS FOR BALTIMORE CITY ET AL.

[No. 89, September Term, 1968.]

312

*Decided February 6, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Francis D. Murnaghan, Jr.* for appellant.

*George W. Liebmann, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Edward F. Burke died domiciled in Baltimore County, Mary-

land, on 23 December 1915, survived by his widow, and three children: Randolph Forrest Burke, Edwin (sometimes called Edward) Winslow Burke, and Madeleine Forrest Burke, later Madeleine Forrest Burke King. By the terms of his will he left the residue of his estate, amounting to some $198,000, in trust, income to be paid to his widow for life, the remainder to be divided at her death among such of his children as survived her. There were other limitations not pertinent to the issue before us. The widow, who had remarried, and at the time of her death was Madeleine, Countess Apponyi, died domiciled in New York on 17 September 1963, having survived her three children, all of whom had died without leaving descendants surviving. None of the children was domiciled in Maryland at the time of death.

By this time, Mercantile-Safe Deposit and Trust Company (the Trustee), which had succeeded to the trusteeship, held trust assets valued at some $346,000. As of the date of Mr. Burke's death, Maryland imposed no inheritance tax on property passing to a spouse or to lineal descendants, but taxed property received by collaterals at 5%. Annotated Code of Maryland (Bagby, 1911) Art. 81, § 120. The Trustee, being uncertain as to the manner in which the trust assets would devolve, paid to the Register of Wills of Baltimore City (the Register) collateral inheritance taxes in the amount of $17,-224.73, representing 5% of the value of the trust assets at the widow's death.[1]

On 2 November 1964, the Trustee instituted a proceeding in the Circuit Court of Baltimore City for the construction of Mr. Burke's will. Among the defendants were:

> The Chase Manhattan Bank, eexcutor of the will
> of the Countess Apponyi;

---

1. Maryland Code (1957, 1965 Repl. Vol.) Art. 81, § 169 requires a trustee to file an inventory of trust property which passes subject to inheritance tax with the register of wills within 90 days after death, and provides for the appointment of appraisers to value the property and determine the tax, which "shall become payable at once to the register of wills, * * *." The tax was actually paid on 16 January 1964. *Compare Pohlhaus v. Register of Wills,* 248 Md. 625, 238 A. 2d 91 (1968) with *McConihe v. Comptroller,* 246 Md. 271, 228 A. 2d 432 (1967).

Stephen de Horthy, the residuary legatee under the
Apponyi will;

Atlantic National Bank, West Palm Beach, Florida,
executor of the will of Randolph Forrest Burke;

Arthur N. Pierson, Jr., to whom Randolph Forrest
Burke had assigned his interest in the estate on
8 June 1955;

Edith Lee Wilkinson, Kenneth S. Walker, Elizabeth
Walker Stoddard, Mabel Walker Lewis and
Yvonne Burke (all collaterals of Edward F.
Burke, and referred to in this opinion as the "Wil-
kinson Group").

There were other defendants joined, who were later deemed to
have no direct interest in the proceeding. Edwin H. Hastings,
administrator d.b.n. of the estate of Madeleine Forrest Burke
King, later intervened in the proceedings. Edwin Winslow
Burke had died intestate, and there had apparently been no ad-
ministration of his estate.

Ultimately, an agreement of settlement was worked out, and
the case was terminated by the entry on 25 June 1965 of a con-
sent decree which adopted the terms of the agreement. The
agreement provided that the trust assets were to be distributed
among the next of kin of Edward F. Burke living at the time
of his death, under the Maryland law of intestacy, subject,
however, to the payment of the sum of $16,000 to the Wilkin-
son Group, to be charged equally against the shares of Edwin
Winslow Burke and Madeleine Forrest Burke King, both of
whom had died intestate.[2]

---

2. The claim of the Wilkinson Group appears to have been based
on the theory that as collateral relatives of Edward F. Burke, they
held a possibility of reverter in these two shares, which had not
been disposed of by the wills of the prior holders. Maryland Code
(1957, 1964 Repl. Vol.) Art. 93, § 346. Miller, *Construction of Wills
in Maryland* (1927) § 210 at 577, points out that a possibility of re-
verter (which ordinarily follows a terminable fee) although not
generally assignable or devisable may be transferred by will in
Maryland by virtue of the statute. *Evans v. Safe Deposit & Trust
Co.,* 190 Md. 332, 58 A. 2d 649 (1948). During argument, counsel
for the Trustee commented that the tenuous nature of the Wilkin-
son claim could best be assayed by the size of the sum paid in
compromise.

As a result of the settlement agreement, the trust assets were distributed as in intestacy:

1. ⅓ to the widow, Countess Apponyi, payable to The Chase Manhattan Bank, her executor;
2. 2/9 to the son, Randolph Forrest Burke, payable to Arthur H. Pierson, Jr., his assignee.
3. 2/9 to the daughter, Madeleine Burke King (after the deduction of ½ of the $16,000 payment) payable to Edwin H. Hastings, her administrator d.b.n.
4. 2/9 to the son, Edwin Winslow Burke (after the deduction of ½ of the $16,000 payment) payable in proportions of 5/9 to The Chase Manhattan Bank, executor of the will of his mother, who had survived him, and 4/9 to Arthur H. Pierson, Jr., assignee of his brother, Randolph Forrest Burke, who also had survived him.[3]

The construction case having been concluded by the entry of the consent decree, on 13 September 1965 the Trustee made application for a refund of $16,424.73 of the $17,224.73 in collateral inheritance tax which it had previously paid to the Register. Had this refund been granted, the sum of $800, 5% of the $16,000 paid in compromise of the claim of the Wilkinson Group, would have been left in the hands of the State. On the advice of the Attorney General, the Register denied the refund claim on 17 May 1966. The Trustee appealed to the Maryland Tax Court, Maryland Code (1957, 1965 Repl. Vol.), Art. 81, § 217, where the action of the Register was affirmed, and from the Tax Court to the Baltimore City Court, which affirmed the Tax Court and entered judgment absolute in favor of the Register for costs. It is from this judgment that the present appeal was taken.

---

3. Edwin Winslow Burke died domiciled in Texas in 1936 intestate and survived by his mother and his brother Randolph, but by neither a wife nor decendant. As we read the applicable Texas statute, Vernon's Ann. Tex. Stat. Probate Code § 38(a), under local law Edwin's net estate was equally divisible between his mother and brother. The record before us is silent as to the reason for the 5/9-4/9 division.

Both parties agree that this appeal presents two questions, which they phrase differently, as do we:

1. For purposes of determining the incidence of Maryland inheritance tax, when an indefeasible future interest, non-possessory at the time of the death of a spouse or lineal descendant of the creator of the interest, vests in possession in the estate of the spouse or the lineal, is the interest to be treated as passing to the spouse or the lineal, without regard to the relationship of the distributees of the estate of the spouse or the lineal to the creator of the future interest?
2. For purposes of determining the incidence of Maryland inheritance tax, when an indefeasible future interest, non-possessory at the time when it is assigned to another by a lineal descendant of the creator of the interest, vests in possession in the assignee, is the interest to be treated as passing to the lineal, without regard to the relationship between the assignee and the creator of the future interest?

Since under our view of the case the answers to both questions are the same, as are the reasons which support them, we shall not deal with them separately.

It has long been held that the inheritance tax levied by the State, and now found in Code, (1957, 1965 Repl. Vol.), Art. 81, §§ 149-50 is a succession tax imposed on the right to receive property, *Pohlhaus v. Register of Wills,* 248 Md. 625, 238 A. 2d 91 (1968); *Downes v. Safe Deposit & Trust Co.,* 164 Md. 293, 164 A. 874 (1933); *Good Samaritan Hospital v. Dugan,* 146 Md. 374, 126 A. 85¹ (1924), and is therefore payable by the person to whom property passes and not by the estate of the person from whom it passes. *Good Samaritan Hospital v. Dugan, supra,* 146 Md. at 383.

Because the tax is imposed on the right to receive, in the usual case the relationship between the person from whom the property passes and the person to whom it passes determines the rate of the tax. As an example, in *Bouse v. Hull,* 168 Md. 1, 176 A. 645 (1935), where a group of corporate legatees renounced their legacies, with the consequence that the legacies

fell into the residuary estate and passed to direct descendants of the testatrix, our predecessors held that a collateral inheritance tax could not be imposed on the renounced legacies. A not dissimilar result was reached in *Hart v. Mercantile Trust Company,* 180 Md. 218, 23 A. 2d 682 (1942). There a testator left each of his daughters an annuity and bequeathed the residue of his estate to a corporate legatee. The daughters filed a petition and caveat attacking the will, which was disposed of by an agreement of compromise, pursuant to which a verdict sustaining the will was entered. Under the agreement, the daughters assigned the benefits which they would have taken under the will to the corporate legatee, and the corporate legatee transferred to the daughters one-half of the net estate, not to exceed $100,000. The court looked to the substance and not the form of the distribution and held that the fund which was to be paid to the daughters was subject to direct and not to collateral inheritance tax, although it initially passed to the corporation as part of the residue.

To us, the teaching of *Hull* and *Hart* seems clear: The rate at which property is to be taxed *may* change if a distribution is made which is at variance, in form or substance, from that set out in the will. Nor does it require any particular logical agility for us to conclude, as we do here, that the rate may also change in cases where a distribution is made which is at variance, in form or substance, from that ordained by our statutes of descent and distribution. The Trustee is quite correct when it contends that *Hull* and *Hart,* though applicable to the case before us, are of limited applicability: they require that a collateral tax of 5% be paid on the $16,000 distributed to the Wilkinson Group, since this was at variance from the usual intestate succession.

Mr. Burke's will had the inadvertent hiatus common to every draftsman's nightmare: it failed to provide what would happen if the widow survived all of the Burke children, as she did. That this resulted in an intestacy is beyond question. By posing one simple question we can neatly avoid the abyss which would yawn if we undertook a searching analysis of the law of future interests: if Burke's will had given the widow the income of the trust for life, and had done no more, who would deny

that his next of kin, living at the time of his death, acquired indefeasible vested interests in the remainder of the trust estate, non-possessory during the widow's lifetime, which would come into possession on the termination of the life estate?

The fact that the widow's share was paid to her executor; Randolph's share, to his assignee; Mrs. King's share, to her administrator d.b.n., or Edwin's share, to his next of kin, has no bearing on the rate applicable to the Burke trust, which was fixed by the taxable event: the death of Mr. Burke. The rate of tax is that which applied at the date of his death, when property passing to spouses and lineal descendants was not subject to tax, and not the rate applicable when the remainders came into possession.[4] Page, *Maryland Death Taxes,* 25 Md. L. Rev. 89, 91-92 (1965). Except for the provision of Code (1911), Art. 81, § 133, which permitted a postponement of the payment of tax, if any there was, until the remainder vested in possession, any tax payable on the remainder interest might well have been due at the time of the death of Mr. Burke. In fact, under present law, a remainderman may elect to accelerate the payment of the tax at the time of the death of the creator of the trust or delay payment until the interest becomes possessory. Code (1957, 1965 Repl. Vol.), Art. 81, §§ 160-61; *Shaughnessy v. Perlman,* 198 Md. 619, 85 A. 2d 38 (1951); 39 Op. A. G. 276, 279 (1954); 49 Op. A. G. 417, 418 (1964).

The Register earnestly contends that because the Maryland inheritance tax is imposed on the right to receive, the incidence of the tax must be determined by reference to the identity of those who actually take. Granting that this may be correct when determining the rate of tax to be paid on interests of a contingent or substitutional nature, when a completely vested interest is involved, 32 Op. A. G. 425 (1947), the situation must be viewed prospectively from the viewpoint of the creator of the interest.

We have examined the Opinions of the Attorney General relied on by the Register, and find none which causes us to

---

4. Had the widow, Mrs. King, or Edwin died domiciled in Maryland, or had Randolph died here without having made an assignment, a second tax would have been imposed at the rate applicable at the time of their deaths.

doubt the correctness of our conclusion that the distribution made to Burke's spouse and children or their representatives passed free of tax, 24 Op. A. G. 919 (1939) ; 34 Op. A. G. 278 (1949). The Trustee is entitled to a refund of $16,424.73 with interest at 6% from 17 May 1966, the date when the refund was denied, Code (1957, 1965 Repl. Vol.), Art. 81, § 218; *Comptroller v. Davidson,* 234 Md. 269, 199 A. 2d 360 (1964), since although payment was made voluntarily by the Trustee, payment could have been compelled, in the language of the statute, "at once" by the Register, Code (1957, 1965 Repl. Vol.), Art. 81, § 169, and the refund was improperly refused.

> *Judgment reversed; judgment entered for appellant for $16,424.-73 with interest at 6% from 17 May 1966; costs to be paid by appellees.*