MERCANTILE-SAFE DEPOSIT AND TRUST COM-
PANY, TRUSTEE, ETC. *v.* REGISTER OF WILLS
OF BALTIMORE CITY, ET AL.

[No. 312, September Term, 1969.]

*Decided April 2, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Charles G. Page,* with whom were *White, Page & Lentz* on the brief, for appellant.

*Henry R. Lord, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

In a deed of trust conveying securities, executed in 1934 to Safe Deposit and Trust Company (now Mercantile-Safe Deposit and Trust Company, the appellant), Dr. Alexius McGlannan of Baltimore provided (a) that the income should go to him for life, then to his widow for life and then to his son for life, and (b) that upon the death of the last survivor of the three the corpus of the trust estate should be distributed to the descendants of the son then living, and if none, to those of ten named nieces and nephews of the settlor who might then be living. Dr. McGlannan died in 1940, his wife in 1943, and the son, who never had a child, in 1967. Nine of the ten nieces and nephews survived the son.

On April 24, 1940, within ninety days after the death of Dr. McGlannan, the trustee, which also was executor of Dr. McGlannan's estate, asked the Orphans' Court to fix the inheritance tax due. The court appointed appraisers who valued the trust estate at $256,456.86. The

trustee paid an inheritance tax thereon of 1% of this amount, sending its check for $2,564.57 to the Register of Wills of Baltimore City with a letter stating that the check was "in payment of the entire amount of Maryland inheritance tax due by our company as Trustee."

On August 1, 1968, the trustee filed a bill in the Circuit Court No. 2 of Baltimore City against the Register of Wills of Baltimore City, the Comptroller of the Treasury of Maryland and the nine surviving nieces and nephews. The bill alleged that after the death of Dr. McGlannan in 1940 the trustee had proceeded under then §§ 124 and 125 of Article 81 of the Code (now §§ 160 and 161) to have ascertained the inheritance tax payable, and paid the amount assessed, that the assessment was not appealed, and that:

> "any modification or attempt to modify the said order of the said Orphans' Court so fixing the said tax; or attempting to reopen said appraisement and assessment; was barred at the latest on April 24, 1944, by reason of the provisions of Maryland Code, 1939, Section 160, which now appears in the same form as Maryland Code, 1957, Article 81, Section 212. The said Section reads in part as follows:
>
> 'All State, County and City taxes of every kind for which no other period of limitation is prescribed by this Article shall be collected within four years after they shall have become due, or else shall be ultimately barred * * *.' "

The bill further alleged that payment of the tax was made pursuant to then §§ 124 and 125 of Art. 81 of the Code (now §§ 160 and 161) and that those sections remained substantially unaltered until the passage of Ch. 696 of the Laws of 1966, which repealed and reenacted with amendments § 161. (The essence of the amendment was to provide first that:

> "(b) In the event any interest shall ultimately vest in possession in someone other than the

person by or on whose behalf application may have been made (and the tax paid thereon) under subsection (a) hereof, such person shall pay a tax according to his relationship to the original decedent and based upon the value of the property or interest therein at the time when the same vests in possession; provided, however, that the tax or taxes previously paid with respect to such property shall be credited to such new tax and only the balance shall be assessed,"

and second that:

"this Act shall take effect according to its terms June 1, 1966, regardless of the date of death of the decedent.")

The bill alleged that the trustee had been advised that the 1966 amendment of § 161,

"did not affect or in anywise change the liability on account of inheritance taxes assessed and imposed upon interests created by the above mentioned trust. However, it is advised that it should obtain the instructions of this Court with regard thereto prior to making final distribution of the trust estate."

It was then alleged that if additional inheritance taxes were now assessed and paid, a portion of the Maryland estate tax that had been paid in 1941 should be refunded. The trustee prayed that the court assume jurisdiction of the trust (1) in order to determine that there are no further inheritance taxes due or, if there are, to fix the amount and the proper payors; (2) in order to determine whether there has been overpayment of Maryland estate taxes and, if so, the amount of refund payable; and (3) in order to direct the trustee with regard to final distribution of the estate.

The Register of Wills and the Comptroller demurred. Thereafter, *Pohlhaus v. Register of Wills,* 248 Md. 625,

which was decided on February 7, 1968, came to the attention of counsel for the trustee. *Pohlhaus* decided that property not subject to probate is to be appraised as provided in § 169 of Art. 81 of the Code (1969 Repl. Vol.). Thereupon the trustee amended its bill to eliminate references to §§ 124 and 125 (and so to their present counterparts, §§ 160 and 161) of Art. 81, and to refer to § 133 of Art. 81 (which is now § 169) as the section under which it proceeded in 1940.[1]

The demurrer of the Register of Wills and the Comptroller was ordered by the court to be taken as refiled to the amended bill. The demurrer (1) said that the Circuit

---

1. The appellant's reply brief, pp. 5-6, says:

"The Pohlhaus case was decided in February of 1968 and was published sometime between then and August 1, 1968, when the bill of complaint was filed. The original complaint in our case had been prepared and filed before counsel for the trustee had read and analyzed the effect of the Pohlhaus case. Up until that time it ha[d] been assumed that Section 169 was not applicable; and that Section 161 (in its prior state) could therefore be applied to an inter vivos trust where a Maryland administration (on other property) had been taken out. This proposition was in fact included in a dictum of this Court as late as 1967 in the case of McConihe v. Comptroller [246 Md. 271]. It was not until Pohlhaus that the contrary was established.

"The theory of the original bill was that when the Trustee applied for immediate assessment of the entire estate in 1940, it was exercising an option pursuant to then Sections 124 and 125 (now Sections 160, 161); that the assessment resulting from this election made the whole tax come due; and that an additional tax could not now be assessed because it was barred by the four-year Statute of Limitations on assessment and collection. The decision in Pohlhaus established that Section 133 (now Section 169) was in fact applicable. This section required immediate assessment of the entire tax without allowing any election; but the result would be the same in so far as it also would bar further assessment of taxes at this time.

"Although the reasoning of Pohlhaus made it highly probable that Sections 124 and 125 (now Sections 160, 161) were not applicable, this Court has not yet specifically decided that point. The amendment was therefore designed to set up Section 133 (now Section 169) and assert that under Section 133 an immediate assessment of the entire tax was required; and as an alternative (the theory of the original bill) that even if an election was possible under Sections 124 and 125, such an election had been made. Therefore, under either theory, that further assessment was forbidden by the Statute of Limitations."

Court lacked jurisdiction because the function of fixing inheritance taxes is "committed by law to the Register of Wills of Baltimore City subject to the appellate remedies provided by statute" (2) made similar statements as to the Maryland estate taxes by reason of §§ 215-219 of Art. 81, (3) alleged that §§ 160 and 161 of Art. 81, as amended, apply, and therefore § 161 requires payment of an additional inheritance tax on the property passing to the nieces and nephews at the collateral rate, with credit for the amount paid in 1940, and (4) that § 108 of Art. 16 and Maryland Rule V 71 do not contemplate the assumption of jurisdiction over trusts by equity courts where the only question at issue relates to determination of taxes.

The case was referred to a Master, who correctly held under *Garrett County Sanitary District, Inc. v. Mayor & Town Council of Oakland,* 249 Md. 400, that the bill of the trustee was in the nature of a bill for declaratory relief and, therefore, a demurrer could test only whether the complainant was entitled to *any* declaration, not whether it was entitled to that sought, and further held that the rights and duties sought to be declared were wholly legal in nature, and therefore the declaration should not be made by an equity court but by a law court. The Master's recommendation that the demurrer be overruled and the case transferred to the Superior Court of Baltimore City was followed and effectuated by the chancellor. Thereupon the parties stipulated as follows:

> "Without waiving objections to jurisdiction either in the Circuit Court or in this Court, it is agreed that, the facts not being in dispute, this case shall be submitted to the Court for decision upon the facts as stated in the Amended Complaint, with exhibits thereto attached, which, for purposes of this litigation, shall be taken as true."

Judge Sodaro, after a hearing, held that "a court of equity lacks the power to assume jurisdiction of a trust

for the sole purpose of determining the applicability of a tax statute to the corpus of said trust." He held next that the declaration sought should not be made by the Superior Court because under the cases and § 6 of Art. 31A of the Code (1967 Repl. Vol.) (the Uniform Declaratory Judgment Act), declaratory relief is not appropriate "when * * * a statute provides a special form of remedy for a specific type of case, that statutory remedy must be followed."

He said in sustaining the demurrer: [2]

> "The mandatory statutory procedure for the contest of Maryland inheritance taxes is clear. The tax is to be paid to the Register of Wills of the appropriate subdivision (Article 81, Sec. 152) and a claim for refund is filed with the Comptroller of the Treasury (Article 81, Sec. 215). If the claim for refund is disallowed, the taxpayer may appeal to the Maryland Tax Court (Art. 81, Sec. 217) and from there to the circuit court and Court of Appeals (Art. 81, Sec. 229 (l) and (m)). Or the taxpayer may refuse to pay the inheritance taxes and be sued by the State of Maryland (Art. 81, Secs. 206-211).

> "This procedure bears a marked resemblance to that established for the contest of state income taxes, discussed in *Williams v. Tawes,* 179 Md. 224 (1941). There the Court refused to permit a taxpayer to by-pass the statutory procedure by way of declaratory judgment, stating at p. 228:

>> 'It thus appears that the Legislature has in detail specifically designated the manner in which the determination of the amount of income taxes due shall be made. It therefore appears that the special statutory remedy

---

2. Another demurrer which amplified, but which did not essentially change, the defenses relied on in the first was filed in the Superior Court by the Register of Wills and the Comptroller after the argument before Judge Sodaro.

given by Chapter 227 of the Acts of 1939 is exclusive of the general statutory remedy provided by Chapter 294 [the Uniform Declaratory Judgments Act]. It would seem most unlikely that the Legislature would have so elaborately provided this special statutory remedy and by enacting Chapter 294 have intended to enable a taxpayer at his mere whim to impose the duties of administrative officers upon the courts.'

See *Reiling v. Comptroller*, 201 Md. 384 (1953); *Tanner v. McKeldin*, 202 Md. 569 (1953) (also involving tax statutes), and see *Poe v. Mayor and City Council*, 241 Md. 303 (1966).

"The pattern of distribution is clear. The only question is whether a tax of 7½% may now be assessed by the State because of the language of Chapter 696 of the Laws of Maryland of 1966 (Art. 81, Sec. 161 (b)). The Complainants cannot utilize the Uniform Declaratory Judgments Act as a device to have that question determined in this Court."

The spirit of cooperation, flexibility and accommodation, which obviously was absent below, seems not to have come to the parties during the course of the appeal.

The trustee and its counsel continue to be unhappy for at least two reasons, at the inhospitality shown them by the Circuit Court and the Superior Court, an inhospitality they feel was unnecessarily induced by the Attorney General. These feelings are understandable for several reasons. First, in various prior instances, the Attorney General has cooperated in the setting up of proceedings in equity by potential inheritance and estate taxpayers solely to test tax liability. In other similar cases he has acquiesced. *See Comptroller v. Davidson*, 234 Md. 269; *Coursey v. Hanover Bank*, 206 Md. 180; *Shaughnessy v. Perlman*, 198 Md. 619; *Safe Deposit and Trust Company v. Bouse*, 181 Md. 351; *National Bank of Topeka v. Graham* (U.S.D.C., D. Md.), 156 F. Supp.

471. See also § 159 of Art. 81, which specifically grants authority to an equity court to fix inheritance taxes when a trust estate is under its supervision.

Counsel for the trustee argues that the statutory procedures which Judge Sodaro held must be followed were not conceived and planned for the situation at hand and are ill-suited and inadequate to deal with it. He says further that § 215 of Art. 81 is here not apt because in terms it applies only to refunds of special taxes or other fees or charges "erroneously or mistakenly paid," and that the trustee claims it owes no additional tax and would be acting without claim of mistake if it voluntarily paid any additional taxes. He says further that if the trustee did follow § 161 of Art. 81 and, anomalously in its view, asks the Orphans' Court to determine the amount of additional inheritance taxes it says are not due, and then paid the taxes so assessed and sought refund, the defense of limitations on which it strongly relies might not be available to it since limitations is a shield and not a sword and, further, the payment of that sought to be refunded would have been made within four years.

The Attorney General counters by saying that he does not want to travel all over the State to litigate tax matters in local circuit courts—hardly a pertinent reason here since his office and the Circuit and Superior Courts are only blocks apart — and prefers to have all tax issues that must be litigated in the Maryland Tax Court. To accomplish this, says the Attorney General, requires insistence that the taxpayer follow the statutory procedures enumerated by Judge Sodaro. His position in relation to the equity court is additionally justified, he claims, by a rule of law, exemplified by cases such as *Greene v. Mumford,* 4 R. I. 313; *In re Rothenberg's Trust* (N.J.), 42 A. 2d 767; *Wellesley College v. Attorney General* (Mass.), 49 N.E.2d 220; *Seamonds v. Sturm* (W.Va.), 5 S.E.2d 788; and *Chapman v. Baltimore Trust Co.,* 168 Md. 254, that equity will not assume jurisdiction just to pass on tax liability.

In our view the aims of both sides will best and most expeditiously be accomplished and the problems respectively facing them be solved most satisfactorily and, so, the interests of justice furthered, by remanding the case to the Superior Court for the institution of a suit in that court by the State to collect the inheritance taxes it claims to be due. In such a suit the State can assert the rights it claims under § 161 of Art. 81, and otherwise, and the trustee can present all defenses that occur to it, including limitations. Code (1969 Repl. Vol.), Art. 81, § 206 (a) provides that any tax required to be paid by Article 81 may be collected from the person liable by an action of assumpsit instituted at any time after the tax becomes due and payable, within the period of limitations. Section 207 prescribes in whose name suit shall be brought. Section 209 says such suits shall be tried at the request of the taxing authority as soon as at issue and have precedence over all other civil suits, and § 210 recognizes the Attorney General as the lawyer upon whom devolves the duty to seek to collect by suit unsecured collectible taxes.

If the State prevails and additional inheritance taxes are payable, the Superior Court, under the circumstances of this case, can declare under the trustee's petition for a declaration the matter of any refund of Maryland estate taxes and any interest payable thereon.

We have not dealt with the merits because they were not decided below. Nothing we have said or failed to say is to be taken as expressing any view as to whether additional taxes are or are not payable and collectible, or as to the impact on that decision of §§ 160 and 161 or of § 169 or of the interrelation of these sections or both.

*Case remanded without affirmance or reversal for further proceedings in conformity with the opinion herein, costs to be paid by appellant.*