MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, Trustee under the Deed of Trust from Alexius McGlannan ET AL. *v.* STATE OF MARYLAND, ex rel. Leroy C. Shaughnessy, Register of Wills for Baltimore City and Louis L. Goldstein, Comptroller of the Treasury

[No. 216, September Term, 1971.]

*Decided February 10, 1972.*

456

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Charles G. Page,* with whom were *White, Page & Lentz* on the brief, for appellants.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Henry R. Lord, Deputy Attorney General,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mercantile-Safe Deposit and Trust Company (the Mer-

cantile), in its capacity as trustee of a trust estate created by the late Dr. Alexius McGlannan and as executor of his will, is stoutly resisting an effort by the State to enjoy what has been characterized in the Mercantile's brief as a "second helping" of inheritance taxes. It was the State which accepted a curious turn of events as an invitation to return to the taxpayer's table.

In 1934, Dr. McGlannan transferred certain securities to the Mercantile's corporate predecessor as trustee, to be held under the terms of an *inter vivos* deed of trust, revocable during the settlor's lifetime. Under the deed, income was to be paid to Dr. McGlannan for life; from and after his death, to his wife for life; from and after the death of the survivor of the settlor and his wife, to their son, Alexius McGlannan, III, for life, and upon the death of the last survivor, the trust assets were to be distributed to the then living children and descendants of deceased children, per stirpes, of Alexius McGlannan, III, and if there were none, the assets were to be divided among such of ten named nephews and nieces of the settlor as were then living.

Dr. McGlannan died in 1940 without having revoked his deed of trust. Mrs. McGlannan survived her husband and died in 1943. Alexius McGlannan, III, died in 1967, leaving no descendants surviving.

Within 90 days of Dr. McGlannan's death in 1940, the trustee had filed in the Orphans' Court of Baltimore City a petition which recited, in part:

> "THAT said Alexius McGlannan executed a revocable Deed of Trust to your Petitioner, as Trustee, on January 29, 1934, comprising certain stocks and bonds, to pay the net income to himself for his life, and after his death to pay the net income to his wife, Sally McGlannan, for her life, and upon the death of the survivor of said Settlor and his said wife the net income is directed to be paid to Alexius McGlannan, 3rd, son of said Settlor, for his life, and *upon*

*the death of the last survivor of said persons*
*the trust fund is to be divided and distributed to*
*and among the children of said Alexius McGlan-*
*nan, 3rd, as shall be then living and the descen-*
*dants then living of any deceased children of his,*
per stirpes, free, clear and discharged of all
trusts;

"THAT said Alexius McGlannan was a resi-
dent of Baltimore, Maryland, and died on Feb-
ruary 25, 1940;

"THAT your Petitioner desires to pay *the en-*
*tire amount of Maryland Inheritance Tax* on the
net value of the trust estate in its hands;" (Em-
phasis supplied)

and prayed that an order be passed appointing apprais-
ers and fixing the rate of tax. The value of the trust as-
sets was determined to be $256,456.86; the rate of tax,
1%, and the amount of tax, $2,564.57, which amount was
paid to the Register of Wills.

The rub comes from the fact that Code (1939) Art.
81, § 109 (now Code (1957, 1969 Repl. Vol.) Art. 81, §
149) imposed a tax of 1% on property passing to a spouse
and lineal descendants, while Art. 81, § 110 (now Art. 81,
§ 150) taxed property passing to collaterals at the rate
of 7½%. Since the clear value (market value after de-
ducting expenses) of the trust assets which passed to
the nephews and nieces at the death of Alexius McGlan-
nan, III, was $436,624.94, there was a possible additional
tax liability of $32,746.87, before crediting payments of
inheritance and estate taxes made in 1940.

Following the death of Alexius McGlannan, III, the
trustee instituted an equity proceeding in Baltimore City
against the Register of Wills of Baltimore City, the Comp-
troller of the Treasury of Maryland and Dr. McGlannan's
nine surviving nephews and nieces, seeking something in
the nature of declaratory relief, in an effort to achieve a
resolution of the problem. The Register and the Comp-
troller demurred; their demurrers were overruled, and

the case was transferred to a law court, where the defendants again demurred. This time the demurrers were sustained, and on appeal to us, *Mercantile-Safe Deposit & Trust Co. v. Register of Wills*, 257 Md. 454, 463, 263 A. 2d 543 (1970), we remanded the case, without affirmance or reversal, in order that the State might institute a suit at law for the recovery of the inheritance taxes which it claimed to be due. It is from a judgment for $30,182.30 in the State's favor entered in that case that this appeal has been taken.[1]

The Mercantile's argument is posited on the fact that when Dr. McGlannan died in 1940, there were three sections of the Maryland Code which might have been applicable to the appraisal of the assets of his trust estate.

At the time of Dr. McGlannan's death, Code (1939) Art. 81, § 124 provided:

> "Whenever any life-estate, or interest for a term of years or other interest less than an absolute interest, in trust or otherwise, shall pass to a person, and a contingent or remainder or reversionary interest shall pass to another person, the Orphans' Court of the County or City in which administration is granted, or any other Court having jurisdiction over the administration or distribution of such property, shall determine, before any distribution thereof shall be authorized, the value of the life-estate, or interest for a term of years, or other interest less than an absolute interest, in accordance with the equity rules of the Supreme Bench of Baltimore City for the valuation of dower interests, and assess the tax against said interest. The tax so ascertained shall be paid within thirty days from the date of such determination. The tax so determined shall be and remain a lien upon such

1. The amount of the judgment was computed in the following manner: 7½% of clear value of the trust assets, $436,624.94 is $32,746.87, from which was deducted $2,564.57, the amount of the 1% tax paid in 1940, thus producing a resulting figure of $30,182.30.

interest for a period of four years after the date of death of the decedent, in the case of real estate, or from the date of distribution, in the case of personalty. From any order or determination of the Orphans' Court, or any other Court having jurisdiction, an appeal shall lie to the Court of Appeals by the Register of Wills on behalf of the State, or by any person in interest, to the same extent and in the same time and manner as from other orders of the Orphans' Court."

This provision remained virtually unchanged except that the valuation of interests less than absolute shall be made in accordance with regulations promulgated under the Internal Revenue Code, and no petition need be filed for the appraisal of interests distributed by a court-approved administration account. It is now found in Code (1957, 1969 Repl. Vol.) Art. 81, § 160.

In 1940, Code (1939) Art. 81, § 125 (now, as substantially revised, Code (1957, 1969 Repl. Vol.) Art. 81, § 161) provided:

"Whenever a life-estate, or interest for a term of years, or other interest less than an absolute interest, shall be valued by the Orphans' Court, or other Court having jurisdiction, as provided in the preceding section, the person entitled to the property after the termination of such estate, by way of contingent interest, remainder or reversion, may apply to the Orphans' Court, or other Court having jurisdiction, for the valuation of such contingent interest, remainder or reversion. In making such valuation, the Court shall determine the value of the whole corpus and deduct therefrom the value of the preceding estate or estates, to the end that the tax collected shall equal that which would have been payable, if an absolute interest in such property had passed. The tax so ascertained shall be paid within thirty days from its ascer-

tainment. But if said person entitled to the property after the termination of the preceding estate shall fail to apply to the Orphans' Court within a reasonable time after the valuation of the preceding estate, or to pay the tax so assessed after application within thirty days from the date of such determination, then such person shall at the time when the same vests in possession at the termination of the preceding estate, pay a tax on the whole value thereof, without deduction of the tax or taxes previously paid. Upon the termination of said preceding estate, the Orphans' Court, or other Court having jurisdiction, shall value the property as of the date when the same vests in possession, and assess the tax thereon. The tax so ascertained shall be and remain a lien upon said property for a period of four years from the date when the same vests in possession. Any order or determination under this section shall be subject to the same right of appeal as provided in the last preceding section."

As we shall see, Art. 81, § 161 was significantly amended in 1966.

The third provision was found in Code (1939) Art. 81, § 133 (which now appears without significant change as Code (1957, 1969 Repl. Vol.) Art. 81, § 169):

"In all cases where estates or any interest therein pass, and there is no formal administration subject to the jurisdiction of any court, it shall be the duty of every trustee or other person making distribution of any property passing subject to the inheritance tax imposed by this sub-title, to file in the Orphans' Court of the county or city where the decedent had his or her residence at the time of his or her death, or in case of real estate, in the Orphans' Court of the county or city in which the real estate is

situated, within ninety (90) days after the death of such person, a full and complete inventory of the property passing subject to the inheritance tax imposed by this sub-title and which said trustee or other person making distribution thereof is about to distribute; and in all such cases where any property passes subject to the taxes imposed by this sub-title, and there is no trustee or other person to make distribution thereof, it shall be the duty of the person receiving such estate or any interest therein, to file the inventory within the time and in the manner hereinabove provided. Upon the filing of the inventory as required by this section, the Orphans' Court shall appoint at least two appraisers to value the property listed in any such inventory for the purpose of determining the amount of tax due and payable hereunder; and the tax so ascertained to be due shall become payable at once to the Register of Wills, for the nonpayment of which he is authorized to institute suit for and on behalf of the State of Maryland in any court of competent jurisdiction."

By Ch. 696 of the Laws of 1966, Code (1957) Art. 81, § 161 (formerly Code (1939) Art. 81, § 125) was repealed and reenacted with amendments and may now be found in Code (1957, 1969 Repl. Vol.) Art. 81, § 161. The essence of the amendment was to provide first that:

"(b) In the event any interest shall ultimately vest in possession in someone other than the person by or on whose behalf application may have been made (and the tax paid thereon) under subsection (a) hereof, such person shall pay a tax according to his relationship to the original decedent and based upon the value of the property or interest therein at the time when the same vests in possession; provided, how-

> ever, that the tax or taxes previously paid with respect to such property shall be credited to such new tax and only the balance shall be assessed."

and second that:

> "this Act shall take effect according to its terms June 1, 1966, regardless of the date of death of the decedent."

See *Mercantile-Safe Deposit & Trust Co. v. Register of Wills, supra,* 257 Md. at 456-57.

The purpose of § 161 (formerly § 125) is to give a vested or contingent remainderman an option: once the estate for life or the estate for years has been valued, and the tax paid, as provided by § 160 (formerly § 124) the remainderman may, within a reasonable time, prepay the portion of the tax attributable to his interest, at the appropriate rate on the then value of the entire interest, taking credit for the tax paid by the life tenant or tenant for years.

Alternatively, the remainderman may elect not to take advantage of § 161 and to postpone the payment of the tax until it is due when his interest comes into possession, if vested, or vests in interest and possession, if contingent. If the remainderman elects not to prepay, whether the interest is vested or contingent, he pays a tax on the value of the interest at the time it comes into possession, *Lilly v. State,* 156 Md. 94, 103, 143 A. 661 (1928). For a careful discussion of this procedure, see *Shaughnessy v. Perlman,* 198 Md. 619, 85 A. 2d 38 (1951).

It is a fair surmise that Ch. 696 of the Laws of 1966 was enacted in order to harmonize three opinions of the Attorney General: 34 Op. Att'y Gen. 259 (1949), 43 Op. Att'y Gen. 355 (1958) and 51 Op. Att'y Gen. 204 (1966), all dealing with the taxation of life estates and remainders under the provisions of Art. 81, § 160 and § 161.

The first ruled that where it is impossible to determine which of two or more vested or contingent remain-

der interests will ultimately take, because the particular interest, if vested, may be subject to complete divestiture, or if contingent, may never vest, and one such interest may pass to a spouse, subject to the 1% rate, and another to a collateral, taxable at the 7½% rate, if the tax is to be prepaid under § 161 it must be paid at the 7½% rate on the entire value of the remainder interest.

The 1958 opinion dealt with a situation where the testator's estate was bequeathed to his widow for life and then to his sons for life. Each son was given a power of testamentary appointment as to one-half of the estate at his death. Tax was paid on the entire estate at the 1% rate. Twenty-two years after the testator's death, one of the sons died, exercising his power of appointment in favor of his widow for life, with remainder to his children. The Attorney General ruled that the collection of the collateral inheritance tax on the life estate of the son's widow was barred by the four year statute of limitations imposed on the collection of taxes by Code Art. 81, § 212, despite the fact that an incorrect assessment had been made when the testator died.

Finally, in 1966, an opinion of the Attorney General involving a virtually identical set of facts overruled the 1958 opinion, and concluded that when a portion of an estate on which tax had been paid at the 1% rate passed to collaterals by virtue of the exercise of a power of testamentary appointment, payment of the collateral tax on that portion became due. Two reasons were given in support of the opinion: to hold otherwise would permit the prepayment option accorded by § 161 to convert a succession tax into an estate tax; and further, that § 161 contemplates the prepayment of the tax only by or in behalf of existing and ascertainable remaindermen (which the appointee of a power could not be until the death of the donee of the power).

The Mercantile is apparently prepared to concede that if the McGlannan trust assets had been appraised under Art. 81, § 160 (formerly Art. 81, § 124) and § 161 (for-

merly § 125), the State could collect by virtue of the 1966 amendment to § 161 the additional tax which it claims in consequence of the fact that the trust assets passed to collaterals on the death of Alexius McGlannan, III.

In an effort to avoid this, it relies on our decision in *Pohlhaus v. Register of Wills,* 248 Md. 625, 238 A. 2d 91 (1968) in support of an argument that § 161 is not applicable to an estate appraised under Art. 81, § 169 (formerly Art. 81, § 133).

The holding in *Pohlhaus* was limited to our finding that the appraisal of property not subject to probate must be made under § 169 and that values must be determined as of a date not later than the date when the appraisers make their return, since § 169 offers no flexibility in valuation dates and no opportunity for reappraisal as does Art. 81, § 153 with respect to property subject to probate.

Therefore, argues the Mercantile, the McGlannan appraisal must have been made under § 169, which calls for the payment of "the tax so ascertained to be due." Having paid the tax ascertained to be due in 1940, it now contends that the collection of any additional tax is barred by the four year period of limitations imposed on the collection of taxes by Art. 81, § 212:

> "All State, county or city taxes of every kind for which no other period of limitation is prescribed by this article shall be collected within four years after they shall have become due, or else shall be utterly barred; and no such taxes shall be collected after said period; * * *."

We find this argument unpersuasive for three reasons. First, as we said in *Pohlhaus v. Register of Wills, supra* 248 Md. at 630; more specifically in *McConihe v. Comptroller,* 246 Md. 271, 275, 228 A. 2d 432 (1967), and again in *State v. Cadwalader, Exec.,* 227 Md. 21, 26, 174 A. 2d 786 (1961), in ascertaining the intention of the

Legislature, all parts of Art. 81 dealing with inheritance taxes are to be read together to find the intention as to any one part, and all parts are to be reconciled and harmonized, if possible. *See Comptroller v. Atlas Industries,* 234 Md. 77, 82-84, 198 A. 2d 86 (1964).

It is our view that Art. 81, § 160 sets up a mechanism for the determination of the amount of inheritance tax due on an interest less than absolute, whether the interest passes as an incident of the administration of an estate in the Orphans' Court, or of an administration in an equity court, or when an interest passes outside the probated estate, although, in the latter case, the appraisal is made, and responsibility for payment is fixed, by § 169.

The legislative intent was clarified by Ch. 449 of the Laws of 1963 which amended § 160 to provide that no petition for the appraisal of an interest less than absolute need be filed in the event that the interest is valued in a court-approved administration account.

Art. 81, § 161 sets up a mechanism for the determination of the amount of inheritance tax which may be paid on successive or subsequent interests which may vest in possession at some future date, upon application of the person or persons who are entitled to such interest if the interest is vested but non-possessory, or may become entitled, if the interest is contingent.

As part of the statutory framework, § 161 must be read as applicable not only to the determination of the inheritance tax which may be prepaid on interests subject to probate under § 160, but also to interests which, although encompassed by § 160, pass outside the probated estate or pass after administration in the Orphans' Court has been completed and are subject to tax under § 169. This construction is implicit in 42 Op. Att'y Gen. 386 (1957), and finds support in *Safe Deposit & Trust Co. v. Bouse,* 181 Md. 351, 29 A. 2d 906 (1943), which dealt, in part, with the valuation for inheritance tax purposes, of successive interests passing under *inter vivos* trusts:

"The Maryland Act provides that whenever a life estate shall pass to a certain person and a contingent remainder shall pass to another person, the Orphans' Court shall determine the value of the life estate and assess the inheritance tax against it. When such life estate is valued, the remainderman may apply for the valuation of his remainder interest, and the tax so ascertained shall be paid within thirty days after its ascertainment. If, however, the remainderman shall fail to apply within a reasonable time after the valuation of the life estate, or shall fail to pay the tax so assessed within thirty days after the date of such determination, then he must pay a tax on the whole value of the property as of the date when it vests in possession. Code, 1939, Art. 81, Secs. 124, 125. It is undoubtedly true that, under this provision for advanced valuation and assessment, a contingent remainderman has the right to pay a tax on something which he may possibly never receive." 181 Md. at 361

The provisions of § 161 (b), providing for the imposition of an additional tax when the interest vests in possession in a person other than the person in whose behalf the tax was originally paid, the tax to be imposed on the value of the property when it vests, and the rate to be determined by the relationship of the person in whom it vests to the decedent, made effective 1 June 1966, regardless of the date of death of the decedent, by Ch. 696, § 2 of the Laws of 1966, are clearly applicable here.

In *Pohlhaus, supra,* we construed § 169 as being applicable to the collection of the tax on any interest or estate which passes outside of formal administration in any Maryland court, because § 169 imposes on the trustee or other person making distribution of such interests the duty of seeing that the interest is valued and that the tax is paid. *Pohlhaus* should not be taken to mean that

the mechanisms for the determination of the amounts of tax attributable to successive interests set up by § 160 and § 161 are not respectively available to the life tenant, the tenant for years, or the remainderman under an *inter vivos* trust.

On the contrary, the purpose of § 169 was not to limit the option available under § 161, but to charge the trustee or other person making distribution with the responsibility of seeing that the trust assets are appraised and that the tax is paid in timely fashion. That this has to be so is clearly demonstrated by a comparison of § 163, which authorizes the Orphans' Court to order a sale of assets subject to probate when taxes determined under § 160 and § 161 are not paid within 30 days, with § 170, which authorizes the Register of Wills to appoint appraisers to value interests which have not been the subject of probate, to assess the tax, and to cause suit to be instituted for collection of the tax, if not paid within 30 days, see *State v. Cadwalader, Exec., supra;* 1 Sykes, *Probate Law and Practice* §§ 792-93, at 717-18 (1956), and Comment, 22 Md. L. Rev. 171 (1962).

The second reason why we reject the Mercantile's argument is that the petition which it filed for the appraisal of the assets of the McGlannan trust and the determination of the tax failed to disclose that there was a possibility that the trust corpus might ultimately vest in certain named contingent remaindermen, who were collaterals. The trustee's argument that it sought, by its petition "to pay the entire amount of Maryland Inheritance Tax on the net value of the trust estate in its hands" in 1940 can only be read in the context that it was seeking to pay the entire tax which might be predicated on the facts which it represented to the Orphans' Court. What the trustee did was sanctioned by long practice.

> "It was once the practice to permit the payment of the direct tax at 1%, and if the remainder ultimately vested in a collateral, an additional tax was paid by the trustee upon dis-

tribution. This practice was ruled out in 1957
by the Attorney General," [citing 43 Op. Att'y
Gen. 355, *supra.*] Page, *Maryland Death Taxes,*
25 Md. L. Rev. 89, 102 (1965).

The practice has been given new life by the 1966 amend-
ment of § 161.

The argument that the Register of Wills, with whom a
copy of Dr. McGlannan's deed of trust had been filed,
was under a duty to make some independent investiga-
tion is unrealistic, since it would cast upon the Register
an unreasonable burden similar to that which we refused
to impose in *State v. Cadwalader, Exec., supra* at 26.

*Cadwalader* is also authority for the proposition that
limitations imposed by § 212 commence to run four years
after taxes have become due and that an inheritance tax
payable under § 169 does not become due until an ap-
praisal is made, *see* Page, *supra* at 98. Because no ap-
praisal was made at the death of Dr. McGlannan to de-
termine the tax which might be payable should the as-
sets vest in the contingent remaindermen, the tax would
not have become due until an appraisal was made after
the death of Alexius McGlannan, III, in 1967. Even if
we assume that the value stipulated by the parties for
the purposes of this case was not an appraisal, the filing
of the State's suit to collect the taxes within four years
of the death of Alexius McGlannan, III, clearly rules out
the defense of limitations.

The third and possibly most compelling reason why
we find the Mercantile's argument unpersuasive is that
even were we to grant the argument that the tax paid
in 1940 was paid under § 169, and that the mechanism
provided by § 160 and the election afforded by § 161 are
both unavailable, one impenetrable barrier remains. The
thrust of § 169 is directed at "estates or any interest
therein [which] pass * * *," and at the "trustee or
other person making distribution of any property pass-
ing * * *." The short answer to the contention is that
while the tax may have been paid in 1940 on the interests

passing to Mrs. McGlannan and Alexius McGlannan, III, no tax was paid on the interests which passed in 1967 to the nephews and nieces. It is their right to receive which is the taxable event, *Shaughnessy v. Perlman, supra,* 198 Md. at 624. Since the tax was not paid by the trustee or the contingent remaindermen in 1940, when the interests passed in 1967 the tax could have been collected in full under § 170 by the Register of Wills with interest at 6% from the date the tax was billed, without giving the credit for the taxes paid in 1940, a credit allowed only by § 161 (b).

For the reasons stated, we find no reason to disturb the result reached below.

*Judgment affirmed, costs to be paid by appellants.*